MATILDA HORNUNG ET AL., IMPLEADED, &c., PROSECU-
TORS, v. TOWN OF WEST NEW YORK AND JOSEPH
ROSCITT.

Argued November 9, 1911—Decided December 19, 1911.

1. The requirement that bidders on a contract for public improve-
   ment shall submit certified checks to the order of the town treas-
   urer with their bids is substantially fulfilled by the submission
   of a cashier's check on an accredited bank, to the order of the
   .town, endorsed by the bidder.
2. An advertisement for bids under section 64 of the Town act of
   1898, *p.* 218, as amended in 1906 (*Pamph. L., p.* 325), required
   bidders to bid a percentage of a standard price and also to state
   the number of working days required for completion, which with
   the allowance provided for inspector's wages would figure as an
   item in the bid. *Held,* that a statement of such number of work-
   ing days was an essential element in the ascertainment of the
   lowest bid, and that its omission by a bidder rendered his bid
   irregular and the award of the ˙contract to such bidder invalid.

On *certiorari.*

Before Justices GARRISON, PARKER and BERGEN.

For the prosecutors, *Collins & Corbin.*

For the town of West New York, *Mark A. Sullivan.*

For Joseph Roscitt, *Pierre P. Garven.*

The opinion of the court was delivered by

PARKER, J.   Prosecutors attack the legality of a resolution
of the municipal body of West New York, awarding to Joseph
Roscitt the contract for a street improvement. The original
prosecutors were competing bidders, but two taxpayers were
admitted as additional prosecutors and have assumed the
burden of the litigation. .

The grounds argued are two—that Roscitt, to whom the ·
contract was awarded, was disqualified because he did not de-

posit with his bid a certified check as required by the conditions; and that he was further disqualified by failing to state in his bid the number of days that he would require to complete the work, which was also required by the conditions.

The first ground is not well taken. Although Roscitt did not deposit a certified check as the term is generally understood, he did deposit a cashier's check upon a bank of unimpeached standing for solvency, to the order of the town, and with his own signature on the back. This made him an endorser. Negotiable Instruments act, *Pamph. L.* 1902, *pp.* 583, 594, §§ 63, 64. Consequently, the town had the bank's own promise to pay, endorsed by Roscitt, and was at least in as advantageous a position to enforce compliance with the bid as if the check had been signed by Roscitt and certified by the bank at his request, both being then liable thereon. *Times Square Automobile Co.* v. *Rutherford National Bank,* 48 *Vroom* 649, 650. There was no substantial distinction between the cashier's check so endorsed, and a certified check, for the purpose of qualifying Roscitt as a bidder. The check was made to the order of the town instead of the town treasurer as required in the advertisement; but the requirement was manifestly for the benefit of the town and the treasurer's authority to collect such a check is unquestionable. *Pamph. L.* 1895, *p.* 230, § 29.

But we reach a different result on the second ground of attack. By section 64 of the Town act of 1895, as amended (*Pamph. L.* 1906, *p.* 325), the town must advertise for proposals for doing the work and furnishing the materials for a street improvement, which proposals shall be presented in such form and manner and under such regulations as the council may prescribe, and "upon the coming in of such proposals the council may enter into contract with the lowest responsible bidders on the terms of their proposals." The council is authorized to reject all the bids and readvertise, but no such action was taken.

What happened was this: Bids were advertised for, to be submitted on blank forms furnished by the town, and based on plans and specifications filed in the office of the town clerk.

The bids were to be in the form of a percentage of a standard of cost stated in the specifications. In the advertisement it is stated that bidders will also state the number of working days they will require to complete the work; and the specifications contain this clause:

"In submitting their bids or estimates bidders will bid a percentage of the above standard of prices, and will also state the number of working days they will require to complete the work, which statement, based upon the wages due the inspectors, will figure as one of the items."

There were a number of bidders, but we are concerned at present only with the two lowest in percentage. Roscitt bid sixty-eight per cent., but stated no time of completion. Henry & Emmer, the original prosecutors, bid sixty-nine per cent. and offered to complete in two hundred working days. This was on June 6th. On June 15th, Roscitt sent in a communication stating that his omission to state the number of working days was due to his being misled by the blank form, and stating one hundred and seventy-five days as the time required for completion; and on the 20th the contract was awarded to him.

It is urged that the requirement of number of working days was an immaterial one and should not affect the validity of a bid; but we think differently. What the town wanted was the lowest total cost; and it is plain, from a reading of the clause quoted from the specifications, that this is made up of two elements, viz., percentage of engineer's standard and cost of inspection; and that a lower per cent. might well make a higher bid when combined with a larger number of working days. The engineer's figures·constituting the base of the percentage calculation are not before us; but it is safe to say that Roscitt would not have taken the trouble to specify twenty-five days less than Henry & Emmer after the bids were opened unless the difference in inspector's fees would more than offset the one per cent. margin in their favor. It is obvious to us that the requirement that the number of working days be stated was material. If so, and if the award of the contract was not discretionary, the award to Roscitt was irregular and

must be set aside; for if the requirement is complied with in one case and may be disregarded in another, the bidders are not on the same footing. *Case* v. *Trenton,* 47 *Vroom* 696.

But it is further urged that the town was not required, under the terms of section 64, as amended, to award the contract to the lowest responsible bidder, or upon the terms and conditions prescribed for bidders. The argument seems to be that because the council may enter into contract with the lowest responsible bidders "on the terms of their proposals," it is authorized to accept a proposal varying materially as to performance of the work, provided the amount of the bid be satisfactory. But we can draw no such meaning from this language. The effect of so doing would be to enable each bidder to draw his own contract and specifications and make competitive bidding a farce. It is not seriously claimed that an absolute discretion to award contracts is vested in the council, or that the word "may" is not imperative rather than permissive. We have no doubt that it is tantamount to "shall;" and that as the act requires the bids to be presented "in such form and manner and under such regulations as the council shall prescribe," the adoption of a standard contract and specifications as a basis for bidding, is not only proper but necessary, and the terms of the proposals must necessarily conform to those of the contract and specifications, and the only terms that could be varied by bidders under the evidence in this case were the percentage of standard and number of working days.

We conclude, therefore, that the bid of Roscitt was irregular, and the award of the contract to him was illegal and must be set aside.