**WOOLSEY et al. v. CITY OF TULSA et al.**

No. 14270—Opinion Filed May 29, 1923.

Rehearing Denied June 26, 1923.

(Syllabus.)

1. **Municipal Corporations—Charter Provisions—Contracts for Public Improvements —Plans and Specifications and Competitive Bidding.**

Charter provisions of municipal corporations providing for the awarding of contracts for public improvements or work to be done upon plans and specifications approved and competitive bidding, held to have been adopted to secure to the city the benefit and advantage of the best contracts obtainable for the proposed improvement or work, to guarantee the public against collusive contracts and to prevent favoritism.

2. **Same—Compliance with Charter—Contract for Incinerator—Injunction.**

Where it appears from the evidence introduced on the hearing of an application for an injunction against the board of commissioners of a municipal corporation in this state to enjoin such board from entering into a contract for the purchase and installation of an incinerator plant, that such board had approved plans and specifications submitted by the city engineer, and the plans and specifications so approved provided that the city desired to purchase a first class garbage and refuse destructor to burn 40 tons of mixed refuse per 12-hour day, and described the kind of material in detail of which such plant must be constructed, and, provided that all qualified manufacturers should have the right to bid upon the proposed proposition; the evidence further disclosing that all modern incinerator plants are patented, and that pursuant to notice given by the city for bids, six different manufacturing concerns submitted bids for the installation of such an incinerator plant as would meet the plans and specifications approved by the city; and no fraud being shown in awarding the contract to the successful bidder—held, the board of city commissioners substantially complied with the charter provisions requiring plans and specifications and competitive bidding, and no injury being shown to have resulted to the plaintiffs in the action, no grounds for equitable relief are established.

3. **Municipal Corporations—Charter Powers —Expenditure of Contingent Fund.**

Where the city charter of a municipal corporation vests the board of city commissioners with authority to appropriate such sums of money respectively for each of the various departments of the city government as it deems necessary for the maintenance and operation thereof, and to make such appropriation for contingent purposes as may be deemed necessary, held, such board of city commissioners may expend such contingent fund so appropriated for any legitimate municipal purpose.

Error from District Court, Tulsa County; W. B. Williams, Judge.

Action by J. C. Woolsey et al. against the City of Tulsa et al. to restrain and enjoin the construction of an incinerator plant. Temporary restraining order granted on the institution of the action. On the hearing of petition to enjoin temporary restraining order dissolved and injunction denied. Plaintiffs bring error. Affirmed.

John R. Woodard, for plaintiffs in error.

I. J. Underwood and Harry L. S. Halley, for defendants in error.

KENNAMER, J. This action was instituted in the district court of Tulsa county on the 16th day of March, 1923, by the plaintiffs in error against the defendants in error to restrain and enjoin the construction of the incinerator plant, which the plaintiffs in error complained of in their petition filed in the action.

Upon the trial of the cause the court denied the plaintiffs any relief. The parties appear here as they appeared in the trial court, and will be referred to as plaintiffs and defendants. The plaintiffs are resident taxpayers of the city of Tulsa.

The plaintiffs urged two grounds for relief against the defendants: First, that the city of Tulsa, through its mayor and board of city commissioners, was about to enter into a contract with the defendant Superior Garbage & Incinerator Company of Texas for the installation of an incinerator plant upon its bid made for the installation of said plant before any definite plans and specifications had been adopted by said mayor and board of commissioners as required by law. Second, that the city of Tulsa did not have sufficient appropriation for the current fiscal year out of which the cost of constructing the plant could be paid.

Upon the plaintiffs filing their petition the court granted a temporary restraining order against the defendants, and on the hearing of the petition for a temporary injunction, the court, after having heard the testimony, dissolved the temporary restraining order and refused to issue an order of injunction. The plaintiffs have prosecuted this appeal to reverse the judgment of the trial court dissolving the restraining order and refusing to issue an order of injunction.

An examination of the evidence contained in the record, in substance, shows the following material facts: That in December, 1922, the city engineer of the ci'y of Tulsa, in compliance with instructions from the board of commissioners of said city, prepared plans and specifications for a garbage disposal plant. These plans and specifications were filed and approved by the mayor and board of commissioners at' a regular meeting, and the city auditor was, by the board of commissioners, authorized to advertise for bids for the installation of a new garbage incinerator plant. The city auditor, pursuant to instructions, advertised for bids, notifying all persons that the general plans and specifications for the garbage and refuse destructor could be secured from the city engineer Pursuant to the advertisement six bids were received, among which was the bid of the Superior Garbage Incinerator Company of Texas.

On the 27th day of February, 1923, the bids were opened by the mayor and board of commissioners, and referred to the city enginer for compilation and report; and on the 8th day of March, 1923, upon report of the engineer and examination of the bids, the Superior Garbage Incinerator Company of Texas was awarded the contract for the construction and installation of the incinerator plant at a cost of $37,000.

It appears that the city had available funds from various bond issues and appropriations for the construction of an incinerator plant of $35,724.51, and the mayor and board of commissioners of said city, by resolution, had ordered the transfer from the general fund of said city for contingent purposes $1,275.49, thereby augmenting the specific fund to sufficient amount to cover the contract price for the purchase and installation of the incinerator plant.

Counsel for the plaintiffs contends that by reason of section 35, art. 11, of the charter of the city of Tulsa, providing for the awarding of contracts for public improvements pursuant to the approval of plans and specifications and competitive bids therefor, and for which sufficient appropriation has been made, the contract for the incinerator plant is illegal and void. It is insisted that the city is unauthorized, through its board of commissioners, to enter into a contract for the purchase and installation of the incinerator plant without first having adopted definite plans and specifications as to the kind of incinerator plant to be installed. It is conceded that the object of the charter provisions, providing for the awarding of contracts for public improve-

ments or work to be done upon plans and specifications approved and competitive bidding, is to secure to the city the benefit and advantage of the best contracts obtainable for the proposed improvement or work; to guarantee the public against collusive contracts and to prevent favoritism. Hannan v. Board of Education of the City of Lawton et al., 25 Okla. 372, 107 Pac. 646; Reed v. Rockliff-Gibson Const. Co. et al., 25 Okla. 633, 107 Pac. 168.

An examination of the record in the instant case fails to disclose any testimony that tends to indicate that the contract for the purchase and installation of the incinerator plant was not the best contract that it was possible for the city to obtain to accomplish the purpose for which the contract was being entered into. The plans and specifications, as set out in the record filed with the board of commissioners, and by it approved, are quite lengthy and in detail describe just what the city desired to install for the purpose of making disposal of the garbage of the city. The plans provide that the city of Tulsa desires to purchase a first-class garbage and refuse destructor to burn 40 tons of mixed refuse per 12-hour day, and that said city desires to secure bids from destructor companies who can show records of plants in successful operation. The plans in detail describe the kind of materials to be used in installing said plant and the requirements of the guarantee for such plant, and provide that any qualified manufacturer shall have the right to bid upon the work. It is true the plans provide that each bidder shall file with his bid full and complete plans and dimensions with the specifications setting forth the details of the furnaces he proposes to erect, together with explanatory notes; but the undisputed testimony introduced on the trial of the case shows that the best and most modern incinerator plants are patented and controlled by the patentee. We cannot concur in the argument of counsel for the plaintiffs that the board of commissioners, under the law, was required to determine in advance what particular kind of incinerator plant it desired to install, and then advertise for bids for the installation of such plant. It is obvious that such a course of procedure would have in effect nullified the very purpose of the charter provisions in providing for competitive bidding. Had the board of commissioners confined its invitation for proposals to one kind of incinerator plant, no one being in a position to bid except the manufacturer making that particular kind, such a proposal for bids would have been the performance of a vain

and foolish thing on the part of the board of commissioners, as it would have been inviting the exclusive owner of such a patented plant to bid on its own plant which no one else could sell and furnish to the city. It is true in many cases the most ample competition may be invited by presenting the bidders complete and particular specifications so as to indicate the precise thing wanted or the work which is to be done and leave nothing to discretion or subsequent negotiation; but this is only true where such things may be furnished by many persons and such persons could bid for the work or materials to be furnished and would have a legal right to do so. Where articles are patented and owned by persons who refuse to sell the right or territory or to fix a royalty by which all persons may acquire such articles, in such cases the preparing of definite plans and specifications for the acquisition of such articles by a municipal corporation desiring the same, would be literal compliance with the strict letter of the law, but in effect would nullify the primary intention of all statutes requiring competitive bidding. Cook v. City of Detroit et al., 26 Mich. 262. It being the object of the law to secure competition, the board of commissioners must determine in each case what competition the nature of the case will admit, and in good faith the public officials intrusted with the performance of this duty must pursue the best method to secure it. Therefore, if they invite bids for a particular thing or process, they must endeavor to secure the best competition possible in the circumstances of each individual case, and if the thing desired happens to be controlled by one person, or concern, it is obvious to exclude everything else which might be substituted for such exclusively controlled article would be to corruptly destroy the essential purposes for which all statutes providing for competitive bidding were enacted. It is manifest that the inflexible rule for which counsel for the plaintiffs contends would work mischief in many cases and destroy the primary intention of the rule which he invokes.

It is our conclusion, there being no fraud or deception in awarding the contract to have installed the incinerator plant, that the law has been substantially complied with, and no injury having been shown in accepting the bid, we are unable to conceive of any sound reason for a court of equity interfering.

We deem it sufficient to state in regard to the second contention of counsel, that no sufficient appropriation of funds had been made to cover the expenditure necessary for the purchase and installation of the incinerator plant, that it appears from the evidence that this contention is not well taken. Section 16, art. 3, of the charter of the city of Tulsa provides that the board of commissioners shall, on the second Monday in July, or as soon as practicable, appropriate such sums of money respectively for each of the various departments of the city government as it deems necessary for the maintenance and operation thereof. In addition to such appropriations, that the board shall make such appropriation for contingent purposes as may be deemed necessary. The city charter provides that the commissioners shall have the control and management of the city finances and provide for the payment of debts and expenses of the city. Clearly the city commissioners were acting within their authority in discharging an important public duty in providing for an adequate garbage disposal plant. It is quite clear that inadequate facilities in this respect would endanger the health of the entire population of the city, and the deficit of a small amount of money in the specific fund to adequately provide necessary equipment was properly provided for by a transfer from the contingent fund to the specific fund which had been appropriated for this purpose. McQuillen on Municipal Corporations, vol. 4, sec. 2179; Bohannan v. City of Stamford (Sup. Ct. of Errors of Conn.) 67 Atl. 372; The State, Bradley Prosecutor, v. Council of the Town of Hammonton (N. J.) 20 Am. Rep. 404, 9 Vroom, 430.

For the reasons stated, the judgment of the trial court is affirmed

JOHNSON, C. J., and KANE, COCHRAN, and HARRISON, JJ., concur.