[Civ. No. 2990. Third Appellate District.—October 23, 1925.]

JOHN F. MILLER et al., Respondents, v. TOWN OF SEBASTOPOL (a Municipal Corporation) et al., Appellants.

[1] Street Law — Second Improvement of Street — Exclusion of Gutters Previously Constructed—Construction of Resolution of Intention.—When the governing board of a city or town proposes, by the authorized legal methods, to order the improvement of a street, once paved and improved, it may anticipate that the gutters constructed thereon at the time of the first improvement will or might be sufficient for the proposed new improvement of the street, and so frame its proposition to repave the street as to exclude therefrom that portion of the street upon which sufficient gutters had previously been and "are now" constructed; and a

resolution of intention to improve such street "for the full width of the roadway thereof, except where gutters are now constructed" means that the full width of the street or the roadway thereof shall be improved, except in those instances where "gutters are now constructed," in which case the improvement, instead of covering the full width of the street, shall be extended only to the gutter, or include only that part of the width of the street which is not already improved by the construction thereon of gutters.

[2] ID.—EXISTENCE OF GUTTER—EVIDENCE.—In this action to relieve plaintiffs' property from the lien of an assessment imposed thereon by virtue of the provisions of the street improvement laws of the state, and to secure an injunction against the issuance of bonds under the Improvement Bond Act of 1915, the evidence showed that there did not exist in front of plaintiffs' property at the time the resolution of intention was adopted or at the time the work of improvement was begun a gutter that would serve in full or proper measure the purposes of such a conduit or passageway for the carrying off of water, within the meaning of the phrase "gutters . . . now constructed" in the resolution of intention, which provided for the improvement of the street "for the full width of the roadway thereof, except where gutters are now constructed."

[3] ID. — EXCEPTION OF GUTTERS — CHARACTER OF CONSTRUCTION. — Where a resolution of intention excepts from its operation that portion of a given street where "gutters are now constructed," the trustees will be deemed to have meant to declare that the gutters existing when the work is begun, and which are to be excepted, shall be such in the general character of construction as will correspond, at least approximately, with the character of the work of improvement as called for by the plans and specifications, as briefly outlined in the resolution of intention.

---

(1) 28 Cyc., p. 978, n. 33.  (2) 28 Cyc., p. 978, n. 33, p. 1190, n. 58.  (3) 28 Cyc., p. 978, n. 33, p. 1027, n. 64, p. 1035, n. 77, p. 1213, n. 81 New.

APPEAL from a judgment of the Superior Court of Sonoma County. H. L. Preston, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

G. W. Libby and H. C. Symonds for Appellants.

E. S. Page for Respondents.

---

3.  See 19 Cal. Jur. 177, 181.

HART, J.—This action was instituted by the plaintiffs to relieve their property from the lien of an assessment imposed thereon by virtue of the provisions of the street improvement laws of the state for the improvement of the street, in the Town of Sebastopol, upon which said property is situated, and to secure an injunction against the issuance of bonds in pursuance of the provisions of the "Improvement Bond Act" of 1915 (Stats. 1915, p. 1441), "to represent and be secured by unpaid assessments for such improvement."

The relief prayed for in the complaint was granted and a decree entered accordingly. A motion for a new trial by defendants was denied.

From the judgment the defendants prosecute this appeal.

[1] The trial court found that the resolution of intention to improve the street upon which the property of the plaintiffs abuts, by its terms, as construed in the light of the evidence, does not include, or, rather, excludes the said property from the operation thereof, and upon such finding predicated its judgment, and that finding presents the principal point of controversy here. Counsel, in their briefs, discuss some other points, which will be given due attention.

The part of the resolution of intention which is important here reads as follows:

"Resolved, that it is the intention of the Board of Trustees of the Town of Sebastopol to order the following work to be done and improvement to be made in said Town, to-wit:

"That the portion of Bodega Avenue, *for the full width of the roadway thereof, except where gutters are now constructed,* from a line parallel and distant one hundred and eighty (180) feet southwesterly along Bodega Avenue from the southwesterly line of South Main Street projected northwesterly, to the southwesterly line of Florence Avenue projected southeasterly, be improved as follows: . . . that concrete curbs be constructed along both sides of said portion of Bodega Avenue above described, of the size, in the manner, and at the places as shown by said plans and specifications except where said concrete curbs are already constructed to line and grade."

The said resolution further provided that the work and improvement therein referred to "is to be done in accordance

with the plans and specifications made therefor by the Town Engineer . . . which plans and specifications are now on file in the office of the Town Clerk of said Town of Sebastopol, and are hereby referred to and made a part hereof."

The views of counsel diverge upon the meaning of the language of the resolution of intention which, as given above, is in italics. The plaintiffs contend that that language means that where, at the time the resolution of intention was passed by the council or trustees, gutters had been constructed and were in existence in front of any property abutting upon the street to be improved, and included within the district to be improved, then that part of the street is and was intended to be excluded from the operation of the resolution—that is, no work of improvement was to be done on that part of such street. The defendants contend that the language referred to merely means that the full width of the street or the roadway thereof shall be improved except in those instances where "gutters are now constructed," in which case the improvement, instead of covering the full width of the street, shall be extended only to the gutter, or include only that part of the width of the street which is not already improved by the construction thereon of gutters. In other terms, the language means, as the defendants conceive, that where gutters have already been constructed, that part of the width of the street that is so improved and used shall not be included in the work of improvement.

We are not in accord with the plaintiffs' motion of the meaning of the language in question. The width of the streets of towns and cities is from curb to curb, of which a small part is always devoted to the purposes of gutters. The street, or a portion thereof, concerned in the proceeding before us had once before been paved and, it may be assumed, gutters in some places constructed thereon. It is obviously true that while a street, although well paved, will, in the course of time, wear out or become so impaired as to render it unfit and even unsafe for use and so require repaving, the gutters properly constructed thereon when the street was first paved will still remain in good condition, sufficient in all respects for the purpose they are intended to serve. This is so because, manifestly, streets

are subject to more violent and perhaps more constant use than are gutters. All these are matters that come within the range of common experience. Hence, when the governing board of a city or town proposes, by the authorized legal methods, to order the improvement of a street, once paved and improved, quite naturally and justly anticipating that the gutters constructed thereon at the time of the first improvement would or might be sufficient for the proposed new improvement of the street, it would so frame its proposition to repave the street as to exclude therefrom that portion of the street upon which sufficient gutters had previously been and "are now" constructed, thereby relieving the owners of property abutting upon the street to be improved, and which must stand' for the expense of the improvement, of the additional financial burden which would be entailed if the full width of the street, from curb to curb, were repaved. Thus we have the reason underlying and prompting the insertion in a proposal to improve streets of such a provision as the one under consideration. This view is, we think, conclusively established by the consideration that the interpretation of the provision in question, as given by the plaintiffs, would, in many instances of its practical application, produce absurd consequences. If, for illustration, several blocks of a street or avenue were included within the district thus to be improved, and there were gutters "now constructed" along the street or avenue in one of the blocks, that portion of the street or avenue would be excepted from the operation of the resolution, even though it were true that such portion of the street would be in need of improvement, even in greater need thereof than any other part or portion of such street. Indeed, it is not impossible that such a situation might arise where one block only of the street was proposed to be improved. It might happen that in front of a single piece of property in such block there existed a well-constructed gutter, while in front of the other property in the same block there was no "constructed gutter"—that is, a gutter so constructed as that it will properly function according to its purposes. In such case, obviously, upon the assumption of the correctness of plaintiffs' interpretation of the language in question, a portion of the street in one block would not be subject to the terms of the resolution, albeit

a particular portion of such street might require repaving, or be in even greater need of such improvement than any other part or portion of the street in such block. The possibility that a situation so absurd could and might arise entirely forecloses any and all justification for holding that it was the intention of the trustees to ascribe to the language in question the meaning claimed for it by plaintiffs.

It is to be conceded that the sentence embracing the exception, as punctuated, is, on first blush, apt to be misleading. If the comma at the end of the word "Avenue," in the sentence, were omitted, the language would be clearer in expressing the meaning which we are convinced it was intended to bear. At any rate, we cannot believe that, upon careful reflection, any other conclusion as to the meaning of the exception provided in the resolution of intention and now under consideration and as to the intention of the trustees with respect to the scope thereof can reasonably be justified than that to which we have been persuaded.

[2] Upon the foregoing considerations alone a reversal of the judgment would be required. But we are further of the conviction that the evidence does not support the finding that, at the times mentioned herein, a gutter was "constructed" in front of the property of plaintiffs. The plaintiff John F. Miller testified that, on the twenty-sixth day of August, 1921 (the date of the adoption and passage of the resolution of intention), "there was a gutter constructed in front of my house or place on Bodega Avenue, in the Town of Sebastopol." This was the full extent of his testimony brought out on direct examination on the subject of the gutter. On cross-examination he testified:

"Q. What character of gutter was constructed? A. It was a macadam gutter. Q. In what way was it constructed? A. Well, it was graveled the same as the street, the street and the gutter was all the same thing. Q. Simply the dirt in its natural condition, wasn't it, practically? A. Well, it was a graveled street, and there was a graveled gutter there also. Q. In other words, the street simply went down lower for the water to run along the curb? A. No, sir; it was curbed that way. Q. What? A. I say, it was curbed that way when the street was in before, when they put the gravel on the street they made the street and the gutter. Q. Was there any constructed gutter? A.

Well, yes, there was a constructed gutter there. Q. Constructed separately from the street? A. How is that? Q. Was there any gutter that was constructed separately from the street? A. Well, the street and the gutter was all one just the same as it is now. Q. So that the gutter was just the same as the street, was it? A. Well, it was a gravel gutter, yes, and a gravel street. Q. It was the same material, the street came right down to the gutter, of the same material? A. Yes, it was gravel.''

Joseph Frates, for the plaintiff, testified that the gutter was "constructed apparently at the same time the street was constructed, and of the same material" (that is, of gravel) ; that "the street just came down into a lower place where the water ran. And a curb was run on the extreme sides of the street, and the gutter and the curb meet. Q. What kind of a curb? A. Wooden curb. Q. A wooden curb was in? A. Yes, sir. Q. And this portion of the gutter, similarly constructed to the street, ran up to this wooden curb? A. Yes, sir.''

Charles E. Mueller, town engineer, who prepared the plans and specifications for the work of improvement, testified that there was in front of the property of plaintiffs nothing more than a gutter line formed by the sloping of the street to the curb; that no gutter was constructed there prior to the time work under the present proceedings was begun; that the gutter line in front of said property was scarcely a ditch, the base or surface of which was formed of rocks; that it was not what is known as and understood to be a constructed gutter. In short, the witness declared that in front of plaintiffs' property "there was nothing called a gutter; it was anything but a gutter; it did not serve the purpose of a gutter." He further stated that the plans "show a pavement from curb to curb in front of the property of plaintiffs," and that they also called for a curb in front of said property—that is, a curb of concrete and the pavement to be extended to the curb, but do not specifically provide for a gutter.

The foregoing is substantially all the oral testimony upon the question whether there was a gutter in front of the property of plaintiffs at the times mentioned, and it is clear therefrom that there did not exist in front of said property at the time the resolution of intention was adopted by the

Board of Trustees or at the time the work of improvement was begun a gutter that would serve in full or proper measure the purposes of such a conduit or passageway for the carrying off of water. This is clearly enough shown to be true by the testimony of the plaintiff, John F. Miller, himself; and that of his witness Frates. According to their testimony, there was nothing in the shape of a gutter before the property involved herein but the depression necessarily formed by the sloping of the street, as originally macadamized, toward and to the curb line in front of said property. The base or surface of the depression was made of rock or gravel, and the curb of wood, but the construction and the condition thereof by reason of such construction, so testified the town surveyor (and in this he was not contradicted), were such that it would practically be no gutter at all as a part of the work proposed to be done and which was done under the plans and specifications adopted in the proceedings involved herein. [3] It is undoubtedly true that by the language, "gutters now constructed," the trustees meant to declare in the resolution of intention adopted in the present proceedings that the gutters existing when the work was begun should be such in the general character of their construction as would correspond, at least approximately, with the character of the work of improvement of the street as called for by the plans and specifications, as briefly outlined in the resolution of intention.

Upon the present branch of the case we are satisfied that the testimony is practically without conflict in showing that, prior to the time of the doing of the work of improvement under the proceedings with which this appeal is concerned, there were no gutters constructed and in existence in front of the property of plaintiffs, within the meaning of the phrase "gutters now constructed," as used in the resolution of intention.

Other points urged by plaintiffs in support of the judgment are: "1. That the proceedings are void because they require the contractor to purchase materials from Warren Brothers at a fixed price, thereby preventing competitive bidding"; 2. That the proceedings are void for the reason that an unreasonable or unwarranted burden was imposed upon the contractor by reason of the requirement by the specifications that he (the contractor) shall himself be

liable for all loss or damage resulting from "any. unforeseen construction or difficulties" encountered in the prosecution of the work; 3. That the warrant and return signed by the contractor, duly verified, "stating the nature and character of the demand," was not returned to the superintendent of streets and recorded by that officer, as required by law. All these points were presented and urged in the recent case of *Woodworth* v. *Town of Sebastopol*, 72 Cal. App. 187 [236 Pac. 981], and were, in an opinion by Presiding Justice Finch, held to be without merit. The points are fully considered in that case, and there is, therefore, no need of considering them herein.

For the reasons herein stated, the judgment is reversed.

Plummer, J., and Finch, P. J., concurred.