C. J. p. 549, §517; 21 C. J. p. 1202, §202; 28 Cyc. p. 680 (anno).     (4) 3 C. J. p. 718, §618; 4 C. J. p. 662, §2556 2 R. C. L. p. 79; 1 R. C. L. Supp. p. 387; 4 R. C. L. Supp. p. 79; 5 R. C. L. Supp. p. 68; 6 R. C. L. Supp. p. 65.     (5) 4 C. J. pp, 851, 853, §2834; 2 R. C. L. p. 193; 1 R. C. L. Supp. p. 432; 4 R. C. L. Supp. p. 90; 5 R. C. L. Supp .p 79; 6 R. C. L. Supp, p. 73

---

## FLYNN CONSTRUCTION CO. v. LEINING-ER et al.

No. 18405.   Opinion Filed June 21, 1927.

(Syllabus.)

**1. Highways—State Highway Commission —Powers and Discretion in Conformity with Law.**

By chapter 48, S. L. 1923-4, the State Highway Commission is created, and vested with powers and duties necessary to fully and effectively carry out all of the objects of the act, but the exercise of its powers and discretion and the enforcement of its rules and regulations must not be inconsistent with such act, or other laws of the state.

**2. Same—Contracts—Construction of Statute—"Lowest Responsible Bidder."**

Section 12 of said act provides: "All contracts for construction work upon the state highway system shall be let to the lowest responsible bidder, or bidders.* * *"   Held, this language contemplates and implies competitive bidding.

**3. Same—"Competitive Bidding."**

The term "competitive bidding" means bidding upon the same undertaking, upon the same material items in the subject-matter, upon the same thing.

**4. Same—Time for Completion an Essential Element in Bids—Allowing Each Bidder to Name His Own Time not Consistent with Statute.**

By the provisions of said act, the time for completion of a contract for road construction is made an essential element in the proposals or bids upon the work to be done.

A rule requiring each bidder to name his own time and permitting each bidder to name a different time for completion of a given project is not consistent with the provisions and intendments of said act.

**5. Same—Contractor After Part Performance in Good Faith Entitled to Complete Contract and to Receive Stipulated Price.**

Where a contract has been entered into for the construction of a given project, under a departmental construction of the law, and the contractor in good faith and in full compliance with the terms of his contract has performed a substantial portion of the work contracted to be done, and has expended substantial sums of money for labor and material upon such work, and there has been no fraud nor collusion in the letting of the contract, the contractor is entitled to complete his contract and entitled to the money due him under the terms of his contract.

Original action for writ of mandamus by the Flynn Construction Company and E. S. Alderman against H. W. Leininger and others, members of the State Highway Commission.   Writ granted.

Suits, Hall & Thompson, for plaintiffs.

Edwin Dabney, Atty. Gen., and Wm. L. Murphy, Ass't. Atty. Gen., for defendants.

HARRISON, J.   This is an original proceeding, which, because of its public importance to road construction throughout the state, has been permitted to be filed in this court for a writ of mandamus compelling the State Highway Commission to pay to plaintiffs the sum of $6,011.34, alleged to be due plaintiffs for work and labor done and material furnished in the construction of a concrete bridge over Elk river, on State Highway No. 10, in Delaware county, under a contract entered into between plaintiffs and the State Highway Commission for the construction of said bridge.

The only reason assigned for the refusal to pay the amount due is that the contract under which plaintiffs are proceeding is illegal and void, for the reason that the advertised notice for bids required, among other things, that each bidder name his own time in which he would complete the work; it being claimed by defendants that time is an essential element in competitive bidding and that by not requiring all bidders to specify the same time for completion of the work to be done, and by requiring each bidder to specify his own time, thus permitting each bidder to name a different time, the contract is illegal and void, for the reason that this manner of bidding does not constitute competitive bidding within the meaning of the statute.

The cause is submitted on an agreed statement of facts, the material substance of which is:

That on October 12, 1926, the State Highway Commission awarded to plaintiff company a contract to construct the bridge in question; that prior thereto, said Commission had advertised for bids for the con-

struction of said bridge and had required in said advertisement for bids that each bidder should name, among other items, the price and time within which he would complete such bridge; that plaintiff company and seven other contractors each submitted separate bids on like forms containing like plans, specifications, and requirements, furnished by said Commission, under rules and regulations promulgated by said Commission; that each bidder named in his bid the price and time within which he could complete the bridge; for illustration, one bid was for $74,339.30 in eight months, one for $67,829.40 in eight months, one for $64,831.14 in twelve months, one for $63,245.50 in ten months, one for $72,720.20 in ten months, one for $62,951.08 in ten months, one for $59,215.85 in eight months, and plaintiff company's bid was for $62,934.40 in six months; that plaintiff company, being considered the lowest and most responsible bidder, was awarded the contract; that pursuant thereto and in compliance with all the terms and conditions thereof, plaintiffs began the construction of said bridge, and have completed all the substructure and a portion of the superstructure thereof, at an expenditure by them of $39,000 for labor and material, and have already been paid $13,000 as it fell due, under the terms of said contract; that there is now due plaintiffs under the terms of said contract the sum of $6,011.34; that plaintiffs have filed a claim for said amount, which claim said Commission has disallowed and refused to pay; that there has been no fraud nor collusion nor charge of any fraud or collusion in the awarding of said contract and no failure nor complaint of failure of plaintiffs to perform the work in full compliance with all the terms, conditions, plans, and specifications in the contract; that in submitting bids each bidder was required, under penalty of having his bid rejected, to bid upon the forms furnished by the Commission and to comply with all rules and regulations promulgated by the Commission: that all things, both on the part of the Commission and of plaintiffs, have been done in good faith and according to the law as interpreted by said Commission, and in strict compliance with every requirement contained in and made part of the contract, except the refusal of the Commission to pay the amount now due plaintiffs; that the amount due is now on hand and available for the payment of plaintiffs' claim.

And it is further stipulated that the Commission had formerly let contracts upon proposals wherein the Commission named the time for completion of the work contemplated and required each bidder to bid upon the same time, but that the Commission had found as a fact that more competition and better results had been obtained under the present form, which requires each bidder to name his own time, than under the previous form, where the Commission named the time and required all bidders to name the same time for completion. Other facts more or less material to different phases of the questions of law presented are also agreed upon in the stipulation of facts, and which will be duly considered in passing upon such questions as we reach them.

Plaintiffs contend, in effect, that the Commission is under a twofold obligation to pay the amount now due them:

(1) Because the form of advertisement for bids, the form of the bid itself, the form of the contract and terms thereof, and all the rules and regulations promulgated by the Commission are each and all in full compliance with the statutes.

(2) Because plaintiffs in justifiable good faith have entered into and in good faith have performed the work in question under a contract prescribed by the Commission, under a departmental construction which plaintiffs were bound to obey, and which had for a substantial period of time been in effect and had been enforced without question of its validity in scores of other like contracts already completed.

In support of the first proposition, plaintiffs cite the following authorities: Hannan v. Board of Education of City of Lawton, 25 Okla. 372, 107 Pac. 646; Reed v. Rockliff-Gibson Construction Co., 25 Okla. 633, 117 Pac. 168; Miller v. Town of Sebastopol (Cal.) 241 Pac. 593; Woolsey v. City of Tulsa, 90 Okla. 205, 216 Pac. 126; Town of Afton v. Gill, 57 Okla. 36, 159 Pac. 658; Sexton v. Smith, 32 Okla. 441, 122 Pac. 686; West v. City of Oakland (Cal. App.) 159 Pac. 202; Suburban Investment Co. v. Hyde (Fla.) 55 So. 76; Williams v. City of Topeka (Kan.) 118 Pac. 864; Hallett v. City of Elgin (Ill.) 98 N. E. 530; State v. Richards (Mont.) 40 Pac. 210; People v. Dorsheimer, 55 Howard Prac. (N.Y.) 118, 30 L. R. A. (N.S.) 127; Hirsch v. Mayor and Aldermen of City of Vicksburg (Miss.) 105 South. 492; Hornung et al. v. Town of West New York (N. J. L.) 81 Atl. 1116; Dovel Co. v. Village of Lynbrook, 213, App. Div. N. Y. 570; Lee v. City of Ames (Iowa) 203 N. W. 790.

Some of the above decisions, if we fail to consider that they were written from vary-

ing viewpoints and upon varying facts, would tend to support the plaintiffs' contention, but by analyzing and comparing them it will be seen that none of them were written from the precise standpoint from which the opinion in the instant case must necessarily be written, nor does any one of them deny that the term "competitive bidding" means bidding upon the same subject-matter, hence we feel that none of them are so completely applicable to the precise questions herein presented as to control our conclusion and decision in this case.

Cases of this character should be determined upon the actual facts presented and the peculiar provisions of law governing such facts rather than by misfitting precedents.

Plaintiffs, in commenting on the case of Woolsey v. City of Tulsa, supra, on page 6 of their brief say:

"And each case in that regard, as said in the Woolsey Case, supra, must stand upon its own facts."

On the other hand, in opposition to the contention of plaintiffs that the contract in question is valid, the Commission, while not especially denying its obligation to pay the amount now due plaintiff company, yet, through its counsel and associate counsel, the Commission contends that the contract in question and all similar contracts are void because the bids, being for different periods of time for the completion of the work, were not estimated upon the same undertaking and were not competitive within the meaning of the statutes; citing the following cases which hold there must be a common standard bid upon in order to constitute competitive bidding, viz.: Hannan v. Board of Education, 25 Okla. 372, 107 Pac. 646; Montague v. Town of Milwaukee (Or.) 193 Pac. 824; Seysler v. Mowery (Idaho) 160 Pac. 262; Ricketson v. Milwaukee (Wis.) 81 N. W. 864; Root v. Douglas County (Neb.) 180 N. W. 46; Urbany v. City of Carroll (Iowa) 157 N. W. 852; Diamond v. City of Mankato (Minn.) 93 N. W. 911; Fones v. Erb (Ark.) 17 S. W. 7; Hornung v. Town of West New York (N. J. L.) 81 Atl. 1116; Jones v. Atlantic City (N. J. L.) 80 Atl. 24; Tice v. Commissioner (N. J. L.) 119 Atl. 25; Homan v. Board of Education (N. J. Sup.) 127 Atl. 824; Gjellefald v. Hunt (Iowa) 210 N. W. 122; Edmundson v. Board of Public Education (Pa.) 94 Atl. 248; Hibbs v. Arensberg (Pa.) 119 Atl. 726.

While no two of the above decisions are based upon the same state of facts, and no two from different states are based upon the same provisions of law, yet they are all in substantial harmony on the abstract proposition that in order that bids may come clearly within the meaning of the term "competitive", they must be upon a common standard, a common basis, upon the same thing, the same subject-matter, the same undertaking.

And the authorities cited by both parties seem to be in general harmony as to the object to be obtained by such statutory provisions as "contracts must be let to the lowest and best bidder," "lowest and most responsible bidder," "lowest bid consistent with economy and good business principles," and similar provisions.

They also agree that certain items or elements other than the dollars and cents element are to be taken into consideration in correctly determining which is the lowest and best bid, but they are at variance as to the degree of importance, the rank which the different elements occupy in measuring the value of the bid. Some seem to hold that time is the controlling element, some that low cost in dollars and cents is the principal element, and varying degrees of importance are given each of such elements. This perhaps is due to differing statutory provisions and differing facts, but because of such variance in opinions and the lack of an established standard of measure with which to determine the real value of a bid to the public, we must apply our own statutes to the peculiar facts and circumstances before us for a rule of measurement.

By chapter 48, S. L. 1923-4, the Legislature created the State Highway Commission, and among other provisions defined the duties and powers of the Commission.

Section 2 of said act is as follows:

"Section 2. The State Highway Commission is hereby vested with the powers and duties necessary and proper to enable the Commission to fully and effectively carry out all of the objects of this act, and in addition thereto, shall have the following specific powers and duties:

"(a). Have supervision of highways and bridges which are constructed, improved or maintained, in whole or in part, by the aid of state moneys, and of highways constructed, in whole or in part, by the aid of moneys appropriated by the United States government so far as such supervision is consistent with the acts of Congress relating thereto.

"(b). Prescribe rules and regulations not inconsistent with this act or other laws of the state of Oklahoma, fixing the duties of all persons employed by the State Highway Commission, and prescribing the manner of

co-operation between county, township, and city officials with the State Highway Commission.

"(c). Investigate and determine upon the various methods of road and bridge construction to the different sections of this state and as to the best methods of construction and maintenance of state highways and bridges.

"(d). Aid at all times in promoting the highway improvement and maintenance throughout the state.

"(e). Let, or supervise the letting of, all contracts for construction or improvement of state highways or any contract for road or bridge construction or improvement where the work is being done in whole or in part with federal moneys."

Section 10 provides:

"Section 10. The construction and maintenance of the state highway system, and all work incidental thereto, shall be under the general supervision and control of the State Highway Commission, which is hereby authorized, empowered, and directed to take whatever steps may be necessary to cause said state highway system to be constructed at the earliest possible time, consistent with good business management and fund available after this act takes effect, and also to provide for the maintenance of said state highway system. The State Highway Commission shall have power to make all final decisions affecting the work provided for herein, and all rules and regulations it may, deem necessary, not inconsistent with this, act, for the proper management and conduct of said work, and for carrying out all the provisions of this act, in such manner as, shall be to the best interest and advantage of the people of this state."

Section 12 provides:

"Section 12. All contracts for construction work upon the state highway system shall be let to the lowest responsible bidder, or bidders, after notice by publication in a newspaper published in the county where the work is to be done in two consecutive weekly issues of said paper; provided, that in all cases where the project advertised shall be for the construction of more than eight miles of road, such advertisement shall provide for bids on sections of said road not to exceed eight miles as well as on the project as a whole, and such contract shall then be let so as to provide for the most economical construction of said project."

These are the provisions which directly bear upon the issues in this case.

It is noted that section 2, supra, vests the Commission with powers and duties necessary to fully and effectively carry out all of the objects of the act, and contains the further seemingly unnecessary provision, to wit: "and in addition thereto, shall have the following specific powers and duties"; then follow subdivisions (a), (b), (c), (d), and (e), supra. We do not understand this latter provision to mean that the Commission is thereby vested with powers in addition to such as are necessary to fully and effectively carry out all the objects of the act, nor construe it to mean that the Commission is thereby vested with more power than is necessary to carry out such objects, nor that the Legislature so intended, but construe its intendment to be merely to enumerate and define certain powers thereby specifically conferred.

This view is borne out by the provision in subdivison (b), sec. 2, supra, to wit:

"Prescribe rules and regulations not inconsistent with this act or other laws of the state of Oklahoma. * * *"

See, also, section 10, supra.

We must therefore hold that the Commission is vested with no more power, nor charged with any further duties, than are necessary to fully and effectively carry out all the objects of the act.

One of the special objects of the act is that "All contracts for construction work upon the state highway system be let to the lowest responsible bidder." See section 12, supra.

This provision has a twofold significance:

(1) To limit the powers of the Commission.

(2) To make it the duty of the Commission to do the things required.

It has a definite purpose; in our opinion, its sole purpose is to obtain the best results at the lowest cost, the greatest value for the fewest dollars; in other words, it is a means for making the best possible bargain, the means expressly adopted by the Legislature for obtaining such results.

It becomes necessary then to find a rule, a measure, with which to determine the quality of the bargain obtained. and, as heretofore stated, inasmuch as no established standard of measurement has been agreed upon, we must go to our statutes for a rule.

The statute, section 12, supra, says: "The lowest responsible bidder."

By using the word "lowest," the Legislature evidently meant the fewest number of dollars. The dollar then is the unit of measure, and the quality of that which is purchased with the fewest number of dollars

constitutes the bargain; but as section 12, supra, also says "responsible bidder," and as section 10, supra, says:

"The construction and maintenance of the state highway system, and all work incidental thereto, shall be under the general supervision and control of the State Highway Commission, which is hereby authorized, empowered, and directed to take whatever steps may be necessary to cause said state highway system to be constructed at the earliest possible time, consistent with good business management and funds available"/ —it is thus made clear that responsibility of bidders, skill, good business principles, time for completion of the work, are items or elements, all of which must necessarily be taken into consideration in judging the character and quality of the bargain obtained.

Skill, responsibility, shortest possible period of time, other things being equal, are the things purchased, paid for with the people's money, and the fewer dollars with which the same things may be purchased, the better the bargain.

The Legislature evidently thought these results could best be obtained by competitive bidding. Its language, "lowest responsible bidder," conclusively implies competitive bidding, and all the courts are agreed that competitive bidding means bidding upon the same thing, upon the identical undertaking, upon the same material items in the subject-matter.

It is true that this Commission is vested with broad powers and discretion, but it is true also that the exercise of such powers and discretion must not be inconsistent with the act itself, nor with other laws of the state. See subdivision (b), section 2, and section 10, supra.

Hence, the Commission is without authority to omit an essential element from the bids.

The agreed statement of facts show that, under the peculiar circumstances of this, and more than a hundred other similar cases, time is an indispensable item in determining whether the public is getting a good or bad bargain.

One very potent reason is that counties in which highways are being constructed have already issued interest-bearing bonds to pay their portion of the cost of construction, and are now paying taxes on the interest and principal of such bonds and are entitled to have their roads completed at the earliest possible time. The Legislature has recognized this condition and has required that highways shall be constructed at the earliest possible time consistent with good business management in the interest of the people of the state. See sections 10 and 12, supra.

In this connection we bear in mind that it is stipulated that the Commission has found as a fact that more bidders, sharper competition, and better results are being obtained under the present form of letting contracts than under the previous form, where the Commission named the time and required all bidders to bid upon the same time.

We do not doubt that more competition and better results are now being obtained than were formerly obtained, but we are not convinced that such betterment of results have been brought about solely by the change in the form of bids. We know, as a matter of common knowledge, that both the amount of highway construction and the number of contractors in the state have greatly increased within the last few years, in fact within the period since the change was made in the form of bids, and we are inclined to believe that the increase in competition is due more to these circumstances than to the mere change in the form of bids; in fact we are unable to see how the change in form of bids could of itself materially increase the number of bidders. True, it is stipulated, in a somewhat argumentative way, however, that small contractors, small concerns, may be engaged on an unfinished project in a remote part of the state, and if allowed a greater period of time for completion of the work bid upon, might be able to do it at a much lower price, but observation has convinced us that the large contractor, though he may have several outfits or construction units, is just as likely to have all of his units engaged as the small contractor is to have his one unit engaged, and that a longer period of time will just as often be profitable to the large contractor with several units of construction as to the small contractor with only one unit. The large contractor obtains many more contracts than the small one, and the small contractor is just as likely to be idle and ready to start work immediately as is the large contractor. Besides, the public is more concerned in the bargain it gets than in favoring either the large or small contractor.

It is also stipulated, in effect, and argued in plaintiffs' brief, that the plans and specifications provide for $50 a day as liquidated damages for each day after the expiration of time for completion of a contract until

the work is completed, and that by the same means the value of time between a contract for twelve months and one for six months can be determined and equalized and the time element rendered immaterial. We observe, however, that the plans and specifications do not provide for $50 a day in any event except upon contracts above $250,000, and in no event are they applicable in any amount except to contractors who fail to complete their contract within the time specified. In other words, those provisions for liquidated damages are not intended to be applied for the purpose of balancing or evening up the difference between a long-time contract and a short-time one. Besides, such an arrangement is admittedly inaccurate on its face, because the statutes forbid contracts for liquidated damages except where, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damages. See sections 5068 and 5069, C. S. 1921.

Hence, if it be extremely difficult to say what the actual damages would be, then it cannot be conclusively said that the public has been fully compensated for doing without a road twelve months which could have been completed in six months. The public might be unwilling to do without a road for $50 a day and pay interest on outstanding bonds during the time, and the best interest of the people must be taken into consideration. See section 10, supra.

Furthermore, if the purpose of the law be to favor the small contractor, and a large contractor proposes to complete a given project in six months, and a small contractor proposes to complete it in twelve months, but is charged enough per day to even the bids, we cannot see wherein he is benefited, and therefore see no merit in plaintiffs' contentions.

It seems to us there should be no substantial difficulty in letting contracts in strict accord with the statute. The Commission has competent engineers and ample means with which to employ all needed assistants, and to obtain all necessary information, and the department engineers are fully as competent as the contractor's engineers to estimate the time in which a project could and should be completed, and certainly as competent to estimate the time as they are to estimate the price for a given project. We see no reason why such engineers should not make an accurate estimate of the shortest time, consistent with other items to be considered, in which a project should be completed, and then require all bids to be upon the same items of subject-matter.

While the provisions of the statutes, and the peculiar circumstances disclosed by the record, impel us to the conclusion that time is an essential element, and that the same period of time for completion of a project should be bid upon by all bidders, in order to fully comply with the statutes, yet we believe the instant case, in present status of the contract and the advanced stage of the work, presents a clearly justifiable exception to rule. Plaintiffs' contract was entered into in good faith under a departmental construction which had been in force for a substantial period of time, and under which numerous other contracts had been made and carried out without question as to their validity, and plaintiffs have faithfully complied with every requirement of their contract.

The major per cent. of the work specified has already been completed at a cost to plaintiffs of many thousand dollars for labor and material; to nullify and set aside such contract at this advanced stage of completion would be a manifest injustice to plaintiffs and an inevitable loss to the state and inconvenience to the public.

We therefore hold that plaintiffs are entitled to complete their contract according to its terms, and entitled also to the amount now due under terms of such contract, and it is so ordered, and further ordered that a writ of mandamus in full accord with this holding and order be forthwith issued.

Writ granted.

BRANSON, C. J., MASON, V. C. J., and CLARK and RILEY, JJ., concur. LESTER and HUNT, JJ., concur in the conclusion.

Note.—See under (1) 29 C. J. p. 564, §282; p. 584, §309. (2) 29 C. J. p. 606, §347; 22 R. C. L. p. 610. (3) 12 C. J. p. 237 (Anno); 22 R. C. L. p. 608. (4) 29 C. J. p. 607, §347. (5) 29 C. J. p. 608, §347 (Anno).