## LEININGER et al. v. WARD-BEEKMAN & BROOKS, Inc.

No. 19627.   Opinion Filed Nov. 19, 1929.

Edwin Dabney, Atty. Gen., Wm. L. Murphy, Asst. Atty. Gen., Edward M. Box, and Park Wyatt, for plaintiffs in error.

Hall & Thompson and G. A. Paul, for defendant in error.

ANDREWS, J. This is an appeal from a judgment and peremptory writ of mandamus in favor of the defendant in error, who was the plaintiff below and who will be hereinafter referred to as plaintiff, against the plaintiffs in error, who were defendants below and who will be hereinafter referred to as defendants, directing and commanding them to pay the plaintiff for the construction of a hard-surfaced road located within Pottawatomie county and known as Federal Aid Project No. 211, section C.

The plaintiff, a contractor, entered into a contract with the State Highway Commission to construct a hard-surfaced road within Pottawatomie county and known as Federal Aid Project No. 211, sections A and B. It is agreed that this contract was in all things legal and regular and that it was let in strict accordance with the law. Thereafter, while the work was in progress,

the contract was extended by three separate extension agreements to include the construction of additional mileage, the total of the extensions covered by the three agreements constituting said section C. The contractor gave the required bonds at the time of the execution of the contract, but it is not shown that any bond was given to cover the extensions.

The case was tried upon an answer which admitted the facts stated in the petition and an agreed statement of facts. The defense was illegality of the extension agreements. It is agreed that the extension agreements were entered into in good faith and without fraud or collusion, and that it has been the practice of the Highway Commission for ten years to make such extension agreements and that in 29 other instances such agreements have been made. There is no dispute as to the facts, and there is nothing for determination by this court except a question of law. That question is stated by the defendants as follows:

"It is our contention that the extension contract is illegal, fraudulent and void in law, and, therefore, under the law of the state of Oklahoma, there can be no recovery."

The fraud alleged in this contention is legal rather than actual, and it is agreed that there was no actual fraud or collusion in the extension agreements.

The agreed statement of facts, with formal parts omitted, was as follows:

"1. All the allegations of fact and each and every of same contained in the petition of plaintiff filed herein are true.

"2. That all work done, material furnished and labor performed, as claimed in plaintiff's petition, in addition to that specifically provided for in the original contract, a copy of which is attached to said petition, were done, furnished and performed in accordance with supplemental contracts, orders, and directions given and made by said State Highway Commission in regular session to the plaintiff herein.

"That said supplemental contracts, orders and directions were given to the plaintiff herein and said work, material and labor were done, furnished, and performed by the plaintiff herein in good faith and without collusion between the parties hereto and without fraud by either party hereto and in accordance with the rules, regulations, practices and constructions of the laws of the state of Oklahoma by said Highway Commission and its predecessors in office, and that such constructions of the laws of the state of Oklahoma have been in force

and effect in the state of Oklahoma and in Highway Commissions and departments of the said state for many years.

"That attached hereto, marked exhibit 'A,' made a part hereof, is a list of projects, like or similar to the one involved in this action, upon which additional work, labor and material have been done, performed and furnished by various contractors under supplemental or additional contracts, orders and directions given to them by said Highway Commission and its predecessors following the same method as employed in this case, which said work, labor and material and construction the said Highway Commission has heretofore accepted and used and for which they have fully paid the said contractors."

The facts agreed to and shown by the pleadings are as follows: The original contract set forth the items of bid and the units of price to be paid for the furnishing of work, labor, and material and the construction of the highway. Prior to the completion of the contract the State Highway Commission ordered and directed the plaintiff to furnish the additional work, labor, and material necessary for the construction of the additional mileage in question under the same terms and conditions as set forth in the original contract, and upon the authority of those orders and directions the plaintiff furnished the work, labor, and material and constructed the highway additional to that specified in the contract as ordered and directed, and the same was completed within the period allowed and provided in the original contract. The work and labor performed, the material furnished, and the construction of the entire highway were accepted and approved by the State Highway Commission and became a part of the highway system of the state of Oklahoma, and since completion and acceptance as aforesaid the same has been used and operated by the state as a part of its highway system.

It has been a custom and practice of the present State Highway Commission and of its predecessors, for the past ten years, to require road construction contractors to increase the amount of labor and material contracted to be furnished and the mileage of road to be constructed in such manner and to such length as the various State Highway Commissions have, from time to time, required under the same terms and conditions as provided in the original contracts for construction, and the State Auditor has issued warrants in payment thereof.

The various State Highway Commissions,

during that time, have uniformly construed the laws of the state of Oklahoma to give to the various State Highway Commissions the right, power, and authority to require contractors of state highways in this state to increase the amount of labor and material to be furnished and the construction work to be done and to require such increase of labor, material, and construction upon the same basis, for the same price, and under the same terms and conditions as have been provided in the various contracts entered into with contractors.

The work, labor, and construction performed and material furnished in this instance are reasonably worth the amount contracted to be paid plaintiff therefor.

The final estimate upon said work under said contract and extension agreements was presented to the State Highway Commission, after the same had been approved by the State Engineer, and said final estimate was examined, approved, and recommended for payment by the State Highway Commission, but the State Auditor has failed and refused and still fails and refuses to pay the amount of the final estimate, though he has heretofore paid the amount of the prior estimates. The full amount due for the work and labor performed under the original contract has been paid.

The statutory authority of the State Highway Commission with reference to the question in issue is that contained in sections 10 and 12 of chapter 48 of S. L. 1923-24, the pertinent provisions of which are as follows:

"Section 10. The construction and maintenance of the state highway system, and all work incidental thereto, shall be under the general supervision and control of the State Highway Commission, which is hereby authorized, empowered, and directed to take whatever steps may be necessary to cause said state highway system to be constructed at the earliest possible time, consistent with good business management and funds available after this act takes effect, and also to provide for the maintenance of said state highway system. The State Highway Commission shall have power to make all final decisions affecting the work provided for herein, and all rules and regulations it may deem necessary, not inconsistent with this act, for the proper management and conduct of said work, and for carrying out all the provisions of this act, in such manner as shall be to the best interest and advantage of the people of this state. The Commission is hereby given power and authority to purchase, lease, or otherwise ac-

quire any tools, machinery, supplies, material or labor needed for said work, and to pay for engineering, preparation of plans and specifications, cost of advertising, engineering supervision and inspection, and all expenses and contingencies in connection with the construction and maintenance of such state highway system, and that preference shall be given materials produced within the state, when quality and price are equal. * * *"

"Section 12. All contracts for construction work upon the state highway system shall be let to the lowest responsible bidder, or bidders, after notice by publication in a newspaper published in the county where the work is to be done in two consecutive weekly issues of said paper; provided, that in all cases where the project advertised shall be for the construction of more than eight miles of road, such advertisement shall provide for bids on sections of said road not to exceed eight miles as well as on the project as a whole, and such contract shall then be let so as to provide for the most economical construction of said project. Each bid shall be accompanied by a certified check equal to five (5%) per cent. of the bid which shall be deposited with the Commission as guaranty, and forfeited to the State Treasurer to the credit of the state highway fund, in the event the successful bidder fails to comply with the terms of the proposal, and returned to the successful bidder on execution and delivery of the bond herein provided for, and the checks of unsuccessful bidders shall be returned to them in accordance with the terms of the proposal. All notices of the letting of contracts under this section shall state the time and place, when and where, bids will be received and opened, and all bids shall be sealed, and opened only at the time and place mentioned in such notice, and in the presence of a majority of the Commission. The successful bidder for the construction of said work shall enter into contract furnished and prescribed by the Commission and shall give good and sufficient bond, in a sum equal to the contract price, to the state of Oklahoma, with sureties approved by the Commission to insure the proper and prompt completion of said work in accordance with the provisions of said contract and the plans and specifications; provided, that if in the opinion of a majority of the Commission, the lowest responsible bid or bids for the construction of any of the roads or parts of roads, herein authorized to be constructed, shall be excessive, then and in that event said Commission shall have the right to reject any or all bids and to construct, under its own direction and supervision, all of such roads and bridges, or any part thereof, or to re-advertise the same for additional bids, if, in the judgment of the Commission, the best inter-

ests of the state would be served by so doing. * * *"

There is no question presented as to the authority of the State Highway Commission to enter into a contract for the construction of state roads. In our opinion the language of section 10, Id., expresses an in- tention on the part of the Legislature to vest in the State Highway Commission all the authority necessary to construct a state highway system at the earliest possible time consistent with good business management from the funds available, in such manner as shall be to the best interest and advantage of the people of this state and to pay therefor, including "* * * all expenses and contingencies in connection with the construction and maintenance of such highway system. * * *"

Under that authority the State Highway Commission began and, as shown by the record in this case, continued to enter into contracts on a unit basis with provisions for settlement on an engineer's computation, subject to approval of the State Highway Commission. The contract in this action was on such basis, and the defendants admit the legality thereof.

An examination of that contract discloses that it differs in many respects from an ordinary contract. Among others, we find the following:

There is no definite contract price and the amount due thereunder can be determined only after completion of the work; there is no definite provision as to the amount of work, labor, or material to be furnished or performed, and that is left to the direction of the engineer in charge; the contractor is required to give preference to honorably discharged soldiers, sailors, and marines, and there are definite provisions therein prohibiting the employment of minors or convict labor except as therein provided; the contract price is based on current published freight rates, and advances or reductions therein during the life of the contract are to be adjusted in determining the amount due under the contract, and the contract throughout is based upon "approximate" quantities. There is one other provision in this contract to which we desire to call attention which is as follows:

"It is further agreed by the parties hereto that the contractor shall file one bond for the whole contract."

It is doubtful if any other arrangement could be made for such a contract. Certainly no definite contract price could be agreed upon without a preliminary survey of sufficient accuracy to warrant both the state and the contractor accepting the same as a basis for the contract. It appears to us that there must be sufficient elasticity in the agreement to provide for the correction of errors or changes in the plans. To attempt to fix a definite contract price would, no doubt, increase the cost either in engineering work or increased bids. "Good business management," as directed by the act, no doubt prompted the Highway Commission to adopt a system for contracting which has long been followed by railroads in construction work, which is recognized in the law and which is defined in Corpus Juris as "Railroad Construction or Repair Contracts."

The State Highway Commission evidently construed its authority as sufficient to determine what sort of a contract should be entered into. Both sections 10 and 12, Id., are silent as to the character of construction contracts and, there being no statutory provision therefor, the determination of the character of the contracts to be entered into was of necessity with the State Highway Commission. Having made that determination within its discretion, in the absence of fraud or collusion, the action of the State Highway Commission may be reviewed, if reviewable at all, only to determine whether there was an abuse of discretion therein.

The State Highway Commission not only construed its authority to contract on a unit basis, leaving until the completion of the work a computation of the amount due under the contract, but to require the contractor to furnish or perform units necessary to the completion of the contract in excess of the engineer's estimate on which the contract was based, and to extend the scope of the work on the unit basis, thereby increasing the number of units to be furnished or performed over the number approximated at the time the contract was entered into. This record shows that in the past ten years 29 of such extensions have been made, and the briefs herein show that at the time this work was performed no question had been raised as to the State Highway Commission having that authority and that the State Auditor had issued warrants in payment of such work.

To deprive the State Highway Commission of that authority would be to deprive it of the right to make changes in the plans for road work which, during the process of construction, would appear to be for the

best interest of the state and its highway system and which might become absolutely necessary by reason of the discovery of conditions not known at the time the contract was made. Such a condition existed in the construction of the Panama Canal, where slides in the Culebra cut made necessary the removal of immense quantities of material not contemplated at the time the original excavation was made. Such a change would be necessary where, after the contract had been executed, a court should order changes made in the route of the highway, thereby requiring either additional or different work.

As an evidence of the necessity for extension of a contract to cover work in continuation of the work involved in the contract, we cite the following:

A contract is made ending at the limits of a town or village. While the work under the contract is in progress the citizens arrange for the grading of their street and to pave the portion of the street other than that to be occupied by the state highway. The citizens are anxious to have the work completed through the town and it is not advisable, because of the small amount involved, to advertise for bids for the additional pavement. Certainly the State Highway Commission would be justified in agreeing with the contractor to complete the pavement through the town on the unit basis provided in the contract. Such a condition is disclosed by the companion case now in this court, where the extension was continued over one of the streets in the city of Shawnee and where the extension was for the purpose of connecting the state highway with the city pavement already constructed.

The first question this court must determine is the meaning of that portion of section 12, Id., reading as follows:

"All contracts for construction work upon the state highway system shall be left to the lowest responsible bidder, or bidders, after notice by publication in a newspaper published in the county where the work is to be done in two consecutive weekly issues of said paper. * * *"

In our opinion this provision prohibits the State Highway Commission from entering into any contract for construction work upon the state highway system until notice by publication has been given as therein provided and bids therefor received. It is not, however, a limitation on the right of the State Highway Commission, in its discretion, to determine the character of contract to be advertised or the details thereof.

The State Highway Commission, having determined that good business management warrants the execution of contracts for construction work upon the state highway system on a unit basis, may advertise for bids on that basis, and a contract let on that basis, after notice as required, is valid.

Having proceeded in a regular way and having secured bids on a unit basis for the construction work, is the State Highway Commission prohibited from applying the agreed price on a unit basis to units not specifically provided for by the contract? To answer this question we must determine the purpose of the Legislature in adopting the limitation contained in section 12, Id. That purpose has been expressed by this court in a construction of that provision, as follows:

"It has a definite purpose; in our opinion, its sole purpose is to obtain the best results at the lowest cost, greatest value for the fewest dollars; in other words, it is a means for making the best possible bargain, the means expressly adopted by the Legislature for obtaining such results." Flynn Construction Co. v. Leininger, 125 Okla. 197, 257 Pac. 374.

A similar statement is made in Dolezal v. Bostick, 41 Okla. 742, 139 Pac. 964; Hannan v. Board of Education, 25 Okla. 32, 107 Pac. 646; Board of County Commissioners v. Smith, 47 Okla. 184, 148 Pac. 111, and Leininger v. Ward, 126 Okla. 114, 258 Pac. 863, all of which are cited by the defendants, but in none of these cases and in none of the other cases cited by the defendants has it been held that a contract entered into on a unit basis after proper notice may not be extended by agreement to apply to units of the same kind, not in contemplation at the time of the execution of the contract, but in addition to or extension of the work contracted for. We must presume that, where plans and specifications have been prepared and a contract has been entered into on a unit basis after proper notice, the unit contract price is the fair reasonable price for such work. The opportunity is given to all to bid, competition is not stifled, and the contract is an economical one. The purpose of the limitation is served.

To require bids for the construction of a small extension would be to subject the state to excessive cost by reason of the small amount involved. It would doubtless be for the financial benefit of the state to

have the additional work done at the unit price already agreed upon. On the other hand, the work covered by the original contract might be so small as to result in an increased contract price therefor and an extension of that contract to include additional work would result in a price being paid for the additional work in excess of what would have been necessary had bids therefor been required.

When a unit price has been agreed upon after notice and competitive bids, it is, in our opinion, within the discretion of the State Highway Commission to make reasonable extensions to cover construction work not embraced within the terms of the contract but which is a continuation of the work contracted, and, in the absence of a showing of fraud, or abuse of discretion or collusion therein, the discretion of the State Highway Commission will not be controlled by this court.

Neither the record nor the briefs in this case raise the question of any abuse of discretion on the part of the State Highway Commission, and in view thereof this court will not determine whether or not the extensions granted in this case constitute an abuse of discretion.

In Flynn Construction Co. v. Leininger et al., supra, this court in construing section 12, Id., said:

"While the provisions of the statutes, and the peculiar circumstances disclosed by the record, impel us to the conclusion that time is an essential element, and that the same period of time for completion of a project should be bid upon by all bidders, in order to fully comply with the statutes, yet we believe the instant case, in the present status of the contract and the advanced stage of the work, presents a clearly justifiable exception to rule. Plaintiff's contract was entered into in good faith under a departmental construction which had been in force for a substantial period of time, and under which numerous other contracts had been made and carried out without question as to their validity, and plaintiffs have faithfully complied with every requirement of their contract.

"The major per cent. of the work specified has already been completed at a cost to plaintiffs of many thousand dollars for labor and material; to nullify and set aside such contract at this advanced state of completion would be a manifest injustice to plaintiffs and an inevitable loss to the state and inconvenience to the public."

And in Leininger et al. v. Ward et al., supra, the court again held the contract to be void and required a re-advertisement for bids. The distinction between the two cases was that in the first the major portion of the contract had been completed, while in the latter no contract had been entered into.

In the two Leininger Cases this court held that the State Highway Commission, in receiving bids, had failed to consider an element essential thereto, and in both of those cases held that the contracts were void, but, notwithstanding their invalidity, the court permitted a recovery in the first case because the work had been substantially performed under a departmental construction followed over a period of years by the State Highway Commission.

We think that the rule announced in Flynn Construction Co. v. Leininger et al., supra, applies to the facts in this case and entitles plaintiff to recover notwithstanding the invalidity of the contract, but we find nothing in that case that warrants us in holding that the contract in this case could not be, in the discretion of the Highway Commission, extended to provide for additional work thereunder as was done in this case.

The facts in the case at bar are more favorable to the plaintiff herein than they were to the plaintiff in Flynn Construction Co. v. Leininger et al., supra. Here the contract is entirely completed on the part of the plaintiff.

Defendants contend that the rule of departmental construction announced in Flynn Construction Co. v. Leininger et al., supra, applies only where the statute in question is ambiguous or doubtful; that the same has no effect against a statute plain in its terms, and that section 12, Id., is not subject to departmental construction. We do not agree with defendants in their application of this rule. In the Flynn Construction Company Case the contract had been entered into after bids received on a published notice, and the departmental construction rule was applied because of the ambiguity in the kind of bids required and contract to be entered into. That is the situation here. It is not contended that section 12, Id., does not require notice for bids, but it is here contended and admitted that notice for bids was given, and the question here is whether or not the State Highway Commission, after having entered into a contract, which is admitted to be valid, could extend the provisions of that contract to other work of the same kind in continuation thereof.

The rule of departmental construction was announced by the territorial court in Hoffman v. County Commissioners, 3 Okla. 325, 41 Pac. 566, to be as follows:

"In the construction of a doubtful and ambiguous law, the contemporaneous construction of those who are called upon to act under the law and were appointed to carry its provisions into effect, is entitled to very great respect"

—and it has been followed in Foot v. Town of Watonga, 37 Okla. 43, 130 Pac. 597, in the following language:

"The construction placed on statutes or constitutional provisions by officers in the discharge of their duties, either at or near the time of the enactment, which has been long acquiesced in, is a just medium for its judicial interpretation"

—which was cited with approval in Glasco v. State Election Board, 121 Okla. 119, 248 Pac. 642. See, also, Crosby v. Partridge, 85 Okla. 196, 205 Pac. 758.

Not only was section 12, Id., given a departmental construction which was acted upon by the parties in the execution of the contract and extensions in question and the completion of the work thereunder, but the same has been given a legislative construction and the Twelfth Legislature amended section 12, Id., by adding thereto the following:

"* * * And the Commission is hereby given the express power and authority to do such work on such basis, without first advertising, if in the opinion of the Commission the doing of such is more economical, or made necessary by an emergency, and for the best interest of the state; provided, further, that when work is done on the contract basis, the Commission within its discretion and where it is for the best interest of road and bridge construction, may extend said contract not to exceed 25 per cent. of the length and extent of the original project, such extension work to be paid for at a price not greater than the contract unit basis." Section 4, ch. 245, S. L. 1929.

—which is a direct recognition, in statutory form, of the authority claimed by tht State Highway Commission under its construction of these sections. It will be noted that the amendment not only provides for an extension, but for the manner of settlement, and in specific terms authorizes such construction on a unit basis. This amendment operates to limit the authority claimed by the State Highway Commission under its departmental construction and limits extensions to not to exceed 25 per cent. length and extent of the original project. Of course,

after the adoption of this amendment, an extension in excess of this limitation would be in conflict therewith and void, and it might be that in the instant case the trial court would have held the extension to be void as an abuse of discretion had the question of abuse of discretion been submitted to the trial court either by the pleadings or the evidence. In our opinion these statutes are ambiguous, and prior to the adoption of the amendment required a departmental construction, and that where the contract was entered into and completed under the departmental construction placed upon them, the rule of departmental construction in Flynn Construction Co. v. Leininger et al., supra, applies, and we so hold.

We call attention to the distinction made by courts (which was recognized by this court in the two Leininger Cases) between contracts performed and contracts unperformed. That distinction is clear.

This court, in Commercial Casualty Insurance Co. v. Town of Breckenridge, 128 Okla. 215, 262 Pac. 208, said:

"We do not find that the bond sued upon is in violation of a statute, but, even though we were compelled to so hold, the judgment might be upheld and sustained under the rule that the public interest requires it, and that it is necessary in order to save from injury persons for whose protection the violated statute was executed. Such rule will be found in 6 R. C. L. 701; 9 Cyc. 550; * * * Flynn Const. Co. v. Leininger, 125 Okla. 197, 257 Pac. 374."

That theory is not common to Oklahoma, but is well expressed by the Supreme Court of Washington in the case of Strong & McDonald, Inc., v. King Co., 267 Pac. 436, wherein that court said:

"In a number of instances where such a contract has been entered into which proved invalid only because of want of legal formality in its execution, and the work performed inured to the benefit of the municipality, we have held that the municipality was liable for the reasonable value of the work; this upon the principle that municipalities are bound by the same standard of right and wrong that the law imposes upon individuals, and that it is neither equitable nor just that a municipality should have the benefit of the property and labor of another without compensating that other therefor. The cases so announcing the rule will be found collected in the case of Besoloff v. Whatcom County, 133 Wash. 109, 233 Pac. 284, and need no further reference. It is our opinion that the appellant comes within the rule. It was not a volunteer in the performance of the work. It was directed to

perform it by the engineer whom the county put in charge of the work, and performed it with the expectation of being paid for it. It was work which was incumbent upon the county to perform, and was necessary in order to make the road usable."

In Sweeney v. Jackson County, 178 Pac. 365, the Supreme Court of Oregon said:

"The bridge as constructed and the work done between these stations was entirely different from that contemplated by the contract in the first instance. The stipulation made a part of the contract that the State Highway Engineer, during the progress of the work, might, by giving written notice to the contractor, alter any of the 'details' of the construction in any manner that might be found expedient or suitable without invalidating the contract relates as the language suggests to details, or proportionally small changes, as when neccessary to the construction of the contemplated bridge, and not to an entire change of the plan or time for the construction thereof. The stipulation in the contract that 'The contractor shall receive for such extra work the actual cost of all materials furnished by him as shown by his paid vouchers. For such labor and teams as are necessary he shall receive the current prices in the locality, which shall have been previously agreed to in writing by the engineer and by the contractor, plus ten (10) per cent,—makes applicable the agreement made by the parties in regard to force account prices above quoted. The contract having provided for such a contingency, it is unnecessary to resort to proof of the reasonable value of the work. We approve the finding of the trial court as to the allowance of the work on the Steinman section."

And in that connection we call attention to the provision of the contract under consideration, which reads as follows:

"It is distinctly understood and agreed that no claim for extra work or materials, not specifically herein provided, done, or furnished by the contractor, will be allowed by the State Highway Commission, nor shall the contractor do any work or furnish any materials not covered by these specifications and contract, unless such work is ordered in writing by the state highway engineer"—which language speaks for itself.

We do not consider it necessary to lengthen this opinion by the citation of authorities to the same effect, and we deem it sufficient to state that the courts of Kentucky, Virginia, West Virginia, New York, Minnesota, California, Texas, North Carolina, Wisconsin, Nebraska, Indiana, and others follow the same rule. Nor do we consider it necessary to discuss the cases cited by the defendants holding that public officers have only such authority as is conferred upon them by law, and that such authority must be exercised in the manner prescribed by law, as we believe, under the facts shown by this record, the State Highway Commission had the authority exercised and that authority was exercised in the manner prescribed by law.

The defendants cite a number of cases holding that contracts made with municipalities were void. An examination of all the cases cited discloses that none of them are applicable under the facts shown by this record and that in each of them there is shown, as stated in defendants' brief:

"(A) Lack of power upon the city or county to contract in any way with reference to the subject-matter, because (1) it was against an express prohibition of the statute and made a crime; or (2) it was in violation of express constitutional or statutory provisions limiting indebtedness of a municipality; or (B) the contract was collusive and fraudulent, or (C) the judgment was collusive and fraudulent and therefore void."

The record in this case shows the existence of none of those conditions, and we think that none of the causes cited apply to the facts in this case.

Defendants contend that the failure to execute bonds and make a deposit voids the contract. This might be true under certain facts, but the record in this case shows that bonds were given and a deposit made which was sufficient to support the contract. There is no provision under our law for bonds or check for deposit on extensions of a contract, and the Twelfth Legislature did not see fit to require such when it provided by legislative act for extensions of such contracts.

There was no error on the part of the trial court in rendering judgment in favor of the plaintiff in this case. That judgment is affirmed, and the writ therein ordered is directed to be issued as of the date of that judgment, commanding the performance of the things therein set forth, with the additional requirement that there be paid to the plaintiff, in addition to the amount found due by the trial court, interest thereon at the rate of 6 per cent. per annum from the date of that judgment.

MASON, C. J., and HUNT, CLARK, HEFNER, CULLISON, and SWINDALL, JJ., concur. LESTER, V. C. J., and RILEY, J., absent.

Note.—See "Constitutional Law," 12 C. J.

§67, p. 715, n. 88. "Highways," 29 C. J. §309, p. 584, n. 73; §347, p. 605, n. 71; p. 606, n. 80; §349, p. 609, n. 5. "Statutes," 36 Cyc. p. 1141, n. 66.