**STATE ex rel. SANDERS v. GRISSO et al.**

No. 28023. Feb. 7, 1939.

Hayes, Richardson, Shartel, Gilliland & Jordan and Bohanon & Adams, for plaintiffs in error.

B. B. Blakeney, W. R. Wallace, and B. B. Blakeney, Jr., for defendants in error.

Mac Q. Williamson, Atty Gen., and Houston W. Reeves, Asst. Atty. Gen., for State Highway Commission.

BAYLESS, C. J. This appeal is from the district court of Oklahoma county. The plaintiff, State of Oklahoma ex rel. Leo Sanders, a taxpayer, filed the action against W. E. Grisso et al., members of the State Highway Commission of the state of Oklahoma, as officials and individuals, C. E. Swain, district engineer for the Federal Bureau of Public Roads, and individually, and Guy H. James.

The allegations of fact and assertions of relief proper thereunder may best be stated in the language of Sanders' brief.

"That the relator and plaintiff, Leo Sanders, was a resident taxpayer of the state of Oklahoma, residing in Oklahoma City, Oklahoma county, and was such at all times mentioned in said petition.

"That the defendants W. E. Grisso, chairman; H. N. Arnold, vice chairman; John L. Coffey, member, and A. L. Commons, secretary, constituted the State Highway Commission of the state of Oklahoma, and the defendant C. E. Swain was the duly appointed and designated district engineer for the Federal Bureau of Public Roads, and the defendant Guy H. James was a resident of Oklahoma county, Oklahoma, and was engaged in the general contracting business.

"That prior to the filing of said petition the State Highway Commission of the state of Oklahoma gave public notice, as required by law, of the intention to accept bids and to award a contract for the construction of Oklahoma Federal Aid Project No. 112-H, bridge, and United States Works Program Grade Crossing Project No. 112-H, overpass, in McClain and Cleveland counties, Oklahoma, which projects were to be financed in part with United States Funds available for aid to various states during the fiscal year 1926, to carry out the national plan and purpose of eliminating grade crossings and improving designated federal highways.

"That the plans and specifications for such proposed work purported to submit to

the bidders six alternate designs, as follows:

"* * * But that in said plans and specifications it was provided that round or caisson bases of equivalent area and volume might be substituted for the square bases, thereby authorizing the construction of said project on three alternate bases, depending upon the kind and character of structural steel used in such construction.

"That Leo Sanders was engaged in the general contracting and construction business and, by reason of a large investment in machinery and appliances, could construct said projects by use of the caisson base at a cost less than other contractors using said method and at a cost less than other contractors not equipped to construct said piers by the use of the caisson method.

"That the State Highway Commission, in submitting said plans and specifications, through error, inadvertence and mistake, or with the design to stifle competitive bidding, specified that piers with a caisson base should be 12 feet ·in height, whereas piers with a square base, with the option on the part of the successful bidder to use a round· base, were required, under said plans and specifications, to be only 8 feet in height.

"That in submitting bids on said proposed construction, Leo 'Sanders, defendant Guy H. James, and other contractors bidding on said work, submitted bids on a unit cost basis, as the exact number of units required for such construction work were not capable of ascertainment.

"That the State Highway Commission of Oklahoma, through error, inadvertence and mistake in calculating the number of units required for the construction of piers by the caisson method or round base method, determined that more units would be required under said method of construction, and, as a result thereof, awarded the bid for said project to the defendant Guy H. James, who was not the lowest responsible bidder for said work; and that the State Highway Commission of the state of Oklahoma proposed to enter into and abide by a contract for such work with the said Guy H. James, which contract, if so entered into, will violate the provision of section 10095, Oklahoma Statutes 1931, as amended by chapter 22 of the Acts of the Fourteenth Legislature of the state of Oklahoma.

"That by reason of the error in said plans and specifications, wherein piers with a base of 12 feet in height are required on designs Nos. 4, 5, and 6, and whereas piers with a base of 8 feet in height, but with the option to the contractor to use a round base, are required on designs Nos. 1, 2, and 3. the proposed construction work upon said projects was not let after competitive bidding, as provided in said statute.

"That the defendants composing the State Highway Commission had or would enter into a contract with the defendant Guy H. James for the construction of the aforesaid projects, unless enjoined, and the defendant C. E. Swain, as district engineer of the Federal Bureau of Public Roads, would approve said contract, unless enjoined; that said contract, if entered into, would be invalid and void and against the public policy of the state of Oklahoma.

"That the defendants comprising the State Highway Commission were about to expend in carrying out said contract funds belonging to the state of Oklahoma derived from taxation and United States government grants: that any expenditure thereof would be illegal for the reason that said contract was not awarded after competitive bidding and in that said contract was not awarded to the lowest responsible bidder; and that the plaintiffs and other taxpayers similarly situated had no adequate remedy at law.

"Wherefore, it was prayed therein that the plaintiffs have an injunction, enjoining said defendants, and each of them, from entering into and approving said contract, and from spending any of the funds, aforesaid, in carrying out said contract, and that a temporary restraining order be issued pending hearing, restraining said defendants from doing the acts aforesaid."

A temporary restraining order was made, and the matter was set for the 30th day of June, 1937, on the matter of the issuance of a temporary injunction. The plaintiffs' application was called for hearing on June. 24, 1937, and, after an amendment to the petition had been permitted, the matter was heard. The temporary restraining order was dissolved, and the application for a temporary injunction was denied. 'Sanders appeals.

The amendment to the petition touched upon the alleged ineligibility of James to bid or be awarded the contract. No evidence touching upon this issue was introduced, nor is the issue discussed in Sanders' brief, and we are treating it as wholly abandoned.

Sanders assigns one proposition in his brief as follows:

"The court erred in sustaining defendants' demurrer to plaintiffs' petition in dissolving the temporary restraining order and in denying plaintiffs' application for a temporary injunction."

The discussion thereunder touches upon two points. viz.: (1) The plans and specifications adopted prevented competitive bidding; and (2) the requirement of the

use of caisson piers 12 feet high in designs 4, 5, and 6 is unreasonable because square piers (with square or round base) eight feet high (permitted in designs 1, 2, and 3) would serve equally as well in designs 4, 5, and 6, and constitutes an unreasonable and illegal expenditure of money.

Sanders cites several opinions of this court relating to the necessity for competitive bidding, and defining competitive bidding. The defendants concur in the applicability of these decisions to the project in question, and to all other similar expenditures of public money. Sanders fails to cite an authority sustaining his contention.

In fact the bare statement of Sanders' first contention is its own refutation.

The plans and specifications contained six designs upon which bids could be submitted, and these may be summarized as follows:

Design No. 1. Carbon structural steel on square piers eight feet high with square or round base.

Design No. 2. Manganese structural steel on square piers eight feet high with square or round base.

Design No. 3. Silicon structural steel on square piers eight feet high with square or round base.

Design No. 4. Carbon structural steel on piers with caisson base, 12 feet high.

Design No. 5. Manganese structural steel on piers with caisson base 12 feet high.

Design No. 6. Silicon structural steel piers on caisson base 12 feet high.

The evidence shows that James bid on design No. 1 ($655,712.18) and design No. 2 ($651,780.78), but did not bid on others. Sanders bid on all designs as follows:

No. 1. _____$675,672.91
No. 2 _____ 657,468.06
No. 3 _____ 660,018.91
No. 4 _____ 696,757.88
No. 5 _____ 668,553.03
No. 6. _____ 671,104.38

The contract was awarded to James on his bid on design No. 2, and it appears his bid was some $5,000 less than Sanders. Several others bid, but it is admitted all of their bids exceeded those of Sanders and James.

Sanders proved he was specially equipped to build caisson type piers and because caisson type piers eight feet high were not called for in designs 4, 5, and 6, there could be no competitive bidding. Since competitive bidding requires only that all bidders would be given an opportunity to bid on all plans and specifications upon the same terms and conditions, it is obvious that there is no merit to Sanders' contention. In fact, his contention that his peculiar ability to build caisson piers exceeded that of other builders (even if true), and, therefore, required the public officials to adopt a design suited thereto, would tend to give him an advantage and would effect, for him, the very arbitrary and unreasonable design as to all other bidders he now unsuccessfully asserts was adopted as to him. There is no right on the part of any contractor to require that plans suited to his asserted peculiar efficiency be adopted. The end to be served in such matters is the reasonable purpose of the public officials. They reasonably determine what they want and what is best to be done, and all any bidder can demand is that he be permitted to submit bids on the same plans and under the same conditions and terms as all others.

His evidence tended to show that, if the bidders had been permitted, he could have submitted bids on designs 4, 5, and 6, using eight-foot caisson piers in lieu of a 12-foot caisson pier, for many thousands of dollars less than James' successful bid on design No. 2, and that the cheaper piers would have served equally well. He argues from this that the adoption of the 12-foot caisson type pier was unreasonable and constituted an illegal expenditure of public funds.

Even if we followed the evidence of his witnesses concerning the equality in utility of eight-foot and 12-foot piers, this is only one of the many factors which might be considered by the Highway Commission in determining upon the design and material for such a structure. We cannot undertake to substitute our judgment for that of the commission, nor can we interfere with the exercise of its judgment unless there is a clear showing of an abuse of discretion. Leininger v. Ward, Beekman & Brooks, Inc., 139 Okla. 292, 282 P. 467. There is no such showing here.

What we have just said about interference with the judgment of such a body applies as well to the discussion of the first point.

The trial court committed no error in sustaining the demurrer to the evidence, and in dissolving the temporary restraining or-

der, and in refusing further injunctive relief.

The judgment of the trial court is affirmed.

OSBORN, CORN, GIBSON, and DAVISON, JJ., concur.