** Summary ** LIMITATIONS ON STATE HIGHWAY COMMISSION TO ENACT RULES OR REGULATIONS The State Highway Commission does not possess the power to enact an enforceable rule or regulation forbidding contractors from using imported steel in performance of their contracts. The State Highway Commission has authority to enact rules or regulations which would require a contractor who bids a unit price for steel based on a price quote obtained from a domestic source to use only domestic steel in the performance of his contract. The Attorney General has considered your request for an opinion wherein the following questions are asked: 1. Does the State Highway Commission possess the power to enact an enforceable rule or regulation forbidding its contractors on highway construction projects from using imported steel in performance of their contracts? 2. If you determine that the Commission is not empowered under the law to bar the use of imported steel on contract construction projects, the Commission inquires whether it has legal authority to enact a rule or regulation which requires a contractor to bid the unit price for steel based on a price "obtained from a domestic source" to use only domestic steel in performance of his contract? Title 69 O.S. 1101 [69-1101](a) (1971) states in part: "All contracts for construction work upon the State Highway System shall be let to the lowest responsible bidder, or bidders, after notice of publication. . . ." The case of Laininger, et al. v. Ward-Beekman Brooks, Inc., Okl., 282 P. 467 (1929), the Court stated in syllabus four: "Limitations provided by (statute) has a definite purpose. Its sole purpose is to obtain the best result at the lowest cost, the greatest value for the fewest dollars; in other words, it is the means for making the best possible bargain, the means expressly adopted by the legislature for obtaining such results. . . ." In other words, the purpose of the statute is to get the maximum benefit out of the public moneys. There are several statutes pertaining to the preference given to Oklahoma or American manufacturers or suppliers. Title 61 O.S. 51 [61-51] (1971) states: "All agencies, boards, commissions, offices, institutions, or other governmental bodies of the State of Oklahoma, and all individuals making purchases on behalf of such governmental bodies, shall purchase for such governmental body goods and equipment manufactured or produced in the United States of America, unless a foreign made product is substantially cheaper and of equal quality or is of substantially superior quality to competing American products sold at a comparable price." Title 69 O.S. 1101 [69-1101](c) (1971) states in part: "When quality and prices are equal, preference shall be given materials produced within the State of Oklahoma . . ." Title 74 O.S. 85.3 [74-85.3] (1971), in unnumbered paragraph 2 of that section states: "The purchasing division is encouraged to make purchases from industries operated by the State Department of Corrections of items manufactured or offered for sale by said Department of Corrections, and to make all purchases from industries operated and items manufactured and sold in the State of Oklahoma, whenever practical." This type of statute has been upheld as being legal. 15 C.J.S., Commerce, Section 60, states on page 618: "Statutes limiting the persons within the State or its subdivisions for contract for public work or supplies to persons who are residents of the State, or are engaged in business therein, or who will perform the work contracted for within the State, or will use materials manufactured or produced in the State, may affect interstate commerce indirectly and yet not be a prohibited interference with or restriction thereof; such statutes do not profess to regulate all contracts, but only those for the State itself or of its subdivisions which, in the last analysis, are those of the State itself; and, like an individual, a State has the right to contract with whom it pleases, unless it contravenes some way either the Federal or the State Constitution." In the case of City and County of Denver, et al., vs. Bossie, Colo., 266 P. 214 (1920) Colorado Court held in Syllabus 9: "C.L. 453-455, giving materials produced in state certain preference in contracts for public works, are not invalid as restricting commerce between states." Thus, this type of statute is not invalid if it does not violate the State or Federal law in any other way. The mandatory use of domestic steel might, in some instances, result in raising the bid being submitted, and thus, increase the cost of the public project. This would defeat the sole purpose of competitive bidding, namely, to make the public moneys go as far as possible in obtaining goods and services used for the benefit and welfare of the public. There has been a previous Attorney General's opinion dealing with the preference of a domestic producer, and this opinion touches, to some degree, the question raised in your opinion request. A copy of the former opinion, Attorney General Opinion No. 69-314, is enclosed for your consideration. In summary, the power to enact a rule or regulation forbidding contractors on highway construction projects from using imported steel could possibly result in limiting the use of steel to that steel which might be considerably more expensive than imported steel, and therefore, result in higher cost for the construction of public highways. This, in turn, would defeat the whole purpose of competitive bidding. It is therefore the opinion of the Attorney General that your first question be answered in the negative in that the State Highway Commission does not possess the power to enact an enforceable rule or regulation forbidding contractors on highway construction projects from using imported steel in performance of their contracts. With reference to your second question, you apparently want to know if the commission has the power to enact a rule or regulation that would prevent a contractor from submitting a bid based upon a higher cost per unit (usually domestic) steel and then use lower cost per unit (usually foreign) steel, and then keeping and holding back the difference for his own benefit; in other words, putting the difference in his own pocket. Title 69 O.S. 301 [69-301] (1971) states in part: ". . . and such department shall be governed by the State Highway Director, provided for by Section 305 of this Code, under such reasonable rules, regulations and policies and road improvement programs as may be prescribed by the commission. Such rules and regulations and amendments thereto as adopted by the commission shall be filed and recorded in the office of the Secretary of State." It would appear that the commission could enact rules and regulations that would insure that the purpose and intent of competitive bidding was promoted. In this regard, it would be consistent to allow the commission to enact the rules and regulations that require a contractor to specify in his bid whether he could use domestic products or foreign products, and also enact rules and regulations that required the contractor to use in constructing the project the particular product that he specified in his bid. These types of rules or regulations would promote the spirit and intent of competitive bidding and would help achieve the goal of getting maximum use from public moneys. It is therefore the opinion of the Attorney General that your second question be answered in the affirmative and that the commission has legal authority to enact rules or regulations which would require a contractor who bids a unit price for steel based on a price "obtained from a domestic source" to use only domestic steel in the performance of his contract. (Todd Markum) (Department of Transportation)