INDEPENDENT INSURANCE AGENTS
OF OKLAHOMA, INC., Charles E. Si-
mone and Horace Phillips, Appellees,

v.

OKLAHOMA TURNPIKE AUTHORITY,
Appellant.

No. 75346.

Supreme Court of Oklahoma.

June 21, 1994.

As Corrected July 7, 1994.

G.M. Fuller & David Pomeroy, Fuller,
Tubb & Pomeroy, Oklahoma City, for appel-
lees.

John A. Claro, Joseph A. Claro & Sarah C.
Spencer, Claro & Johnston, Oklahoma City,
for appellant.

PER CURIAM:

The Oklahoma Turnpike Authority (Authority) appeals from the trial court's grant of summary judgment to appellees Independent Insurance Agents of Oklahoma, Inc., Charles E. Simone and Horace Phillips. By order dated March 13, 1990, the trial court granted summary judgment and enjoined the Authority from implementing an Owner-Controlled Insurance Program and from performing any and all contracts in which the contractors with the Authority were not providing workers' compensation and public liability insurance at the contractor's expense.

## SUMMARY OF FACTS

This case concerns the way insurance was provided during the construction of four new turnpikes in Oklahoma. Before beginning construction, the Authority considered implementing an Owner-Controlled Insurance Program (OCIP) for the projects. Under an OCIP, the owner of a large construction project purchases and provides for consolidated "on-site" public liability and workers' compensation insurance coverage during the construction period. The owner is the "insured" and policy coverage is extended to all who work "on-site" under a contract with the owner. As the Authority notes, this concept differs from the practice of contractors and subcontractors buying such insurance coverage piecemeal and then passing the costs to the owner by including them in their bids and contracts. Not only is a typical OCIP designed to reduce the cost of insurance premiums, it allows for a coordinated risk management and safety program for workers and visitors to the construction site. An OCIP also provides for insurance premium rebates to the policy owner for good construction safety records.

The Authority contacted an insurance consultant to research the possibility of setting up an OCIP for the planned turnpike projects. The consultant concluded that an OCIP would produce the advantages outlined above and recommended that the Authority adopt the OCIP concept. The consultant also recommended twelve insurance agencies in Oklahoma with the qualifications and construction insurance expertise to provide the Authority with an OCIP. The Authority solicited proposals from the twelve agencies to determine which insurance agency could perform the services required on the lowest and best basis for an OCIP. After the agent was selected, the Authority published invitations to bid to prequalified contractors, requiring each to submit bids with and without on-site insurance coverage as a contract pay item.

Before implementing its OCIP, the Authority consulted with the staffs of the Oklahoma Attorney General and the Insurance Commissioner and received approval for the plan from the Risk Management Administrator of the Office of Public Affairs. The Authority then adopted an OCIP and selected one of the agencies recommended by the consultant to administer the program. The Authority's OCIP required each bid-winning contractor to provide insurance for off-site activities in the areas of general and automobile liability as well as workers' compensation. Insurance coverage for activities *on the job site* was purchased by the Authority itself. From the time the winning bidder entered into a contract with the Authority and until two years after completion, each contractor is covered as an additional named insured on the Authority's policies. The Authority maintains that its OCIP is beneficial because it provides better coverage and higher limits for less money than could otherwise be obtained, in addition to a safety plan of unusual merit.

## PROCEDURAL HISTORY

This district court action was filed after construction of the turnpikes had begun. Appellees sought to have the Authority's actions declared illegal and requested the court to enjoin the Authority from proceeding with the OCIP. Appellees alleged the program contravened provisions of the Oklahoma Highway Code of 1968 [1] and the Public Competitive Bidding Act of 1974 [2], and was thus

---

1. 69 O.S. § 101 et seq.

2. 61 O.S. § 101 et seq.

subject to being enjoined under 61 O.S.1981 § 122.[3]

The trial court granted appellees' motion for summary judgment by Journal Entry dated March 13, 1990. That Journal Entry enjoined the Authority from implementing an OCIP and from performing all contracts in which the contractors are not providing for themselves, at their own expense, workers' compensation and public liability insurance. The instant proceedings are the result of the Authority's appeal from the trial court's ruling. The Authority also filed an application to assume original jurisdiction and petition for writ of prohibition in Cause No. 75,197. This Court issued a temporary stay of the trial court's order in Cause No. 75,197.

## ARGUMENTS ADVANCED

Appellees argue that the construction contractors are statutorily required to provide all insurance for the project and that the state Highway Code and Public Competitive Bidding Act prohibit the Authority from providing on-site workers' compensation and public liability insurance for itself and the contractors. Appellees' arguments are grounded on four statutory provisions. Citing 61 O.S.Supp.1989 § 113 and 61 O.S.1981 § 103, appellees assert the Authority is subject to the Public Competitive Bidding Act which, they contend, mandates public liability and workers' compensation insurance be *provided by contractors* to the Authority. Appellees also argue that the designation by the Authority of one insurance agent to handle all workers' compensation and public liability insurance violates 61 O.S.1981 § 135 and 69 O.S.1981 § 1734.

The Authority asserts that the appeal rests on one consideration: Whether Oklahoma law allows or prohibits the OCIP. The crux of the Authority's argument is that the trial court's judgment is erroneous because the Oklahoma Highway Code and the Public Competitive Bidding Act grant the Authority the sole discretion to determine the amount of insurance to be provided by contractors. Thus, the Authority submits, 61 O.S. §§ 103 and 113(B)(4) do not, as a matter of law, require contractors to provide all insurance for the project. They contend that on-site insurance coverage may be provided by the Authority under other statutes such as 69 O.S. § 1703(a), 69 O.S. § 1502 and 74 O.S.Supp.1989 § 85.34(A)(5), (C) and (E). They also dispute appellees' contention that the designation of one agent to administer the OCIP violates state law.

## DISCUSSION

■ Initially, we disagree with appellees' contention that the Authority violated 61 O.S. 1981 § 135 and 69 O.S.1981 § 1734 in selecting a single insurance agent to handle insurance for the owner-controlled insurance program. Title 61 O.S.1981 § 135 provides in relevant part:

(A) No public agency, nor any officer, agent or employee thereof, nor any person acting or purporting to act on behalf of such public agency or an officer, agent or employee thereof, *shall,* with respect to *any public construction contract require or attempt to require* a contractor or any subcontractor to make application to *or to procure* or obtain *from a particular insurance* or surety *company,* agent or broker, *any of the* bonds or *insurance required by this act.*

(B) Any provisions in a public construction contract or in the bidding documents in conflict herewith are hereby declared to

---

**3.** Section 122 provides:

Any taxpayer of the State of Oklahoma, or any bona fide unsuccessful bidder on a particular public construction contract, within ten (10) days after any such contract has been executed, is empowered to bring suit in the district court of the county where the work, or the major part of it, is to be done to enjoin the performance of such contract if entered into in violation of the provisions of this act.

Appellees are comprised of an insurance agents' association, the association's chief executive officer and an association member insurance agent. As an aside, the record reveals that much of appellees' litigation expenses are being paid by several insurance agencies that were asked to submit OCIP proposals and either declined to do so or were losing applicants in the competitive selection process. One such unsuccessful applicant, and a major monetary supporter of appellees's cause, is the insurance agency of the consultant who recommended that the Authority implement an OCIP.

be contrary to the public policy of this state and are thereby void.

(emphasis added).

The legislation creating the Oklahoma Turnpike Authority contains a similar provision at 69 O.S.1981 § 1734:

No officer, consultant, agent, or employee of the Authority and no person acting or purporting to act on behalf thereof *shall,* with respect to any contract, *require* the contractor or any subcontractor *to make* application to or *obtain* or procure any of the surety bonds and *any other type of insurance* specified in connection with such contract, or specified by any law, *from a particular insurance* or surety company, agent or broker.

(emphasis added).

The "insurance required by this act" is being provided partially by the contractors and partially by the Authority. The contractors are not required to provide any insurance for on-site activities; that insurance is purchased by the Authority. Regarding off-site insurance, the Authority does not dictate that the contractors' insurance be obtained from any particular insurance company. The Authority simply requires that off-site insurance be obtained. Accordingly, appellees' reliance on 61 O.S. § 135 and 69 O.S. § 1734 is misplaced. The Authority's OCIP does not run afoul of either of those statutory provisions.

Appellees primary argument is that the *contractors* are required to provide all the insurance, both on and off the job sites, pursuant to 61 O.S.1981 § 103 and 61 O.S.Supp.1987 § 113. They contend that this statutory authority, coupled with this Court's pronouncement in *Carpet City, Inc. v. Still-*

*water Mun. Hosp. Auth.,* 536 P.2d 335 (Okla. 1975), mandate that we invalidate the OCIP. We first address appellees' argument that the Authority's OCIP is violative of § 113.

In *Carpet City,* we addressed whether the trustees of a public trust could waive the bond and insurance required by 61 O.S.Supp. 1974 § 113(B)(3) in connection with the construction of a new hospital facility. Based upon the mandatory language utilized in the statute, we held that such requirements could not be waived. *Carpet City,* 536 P.2d at 338. The primary lesson to be learned from our holding in *Carpet City* is to note the dichotomy between subsections (3) and (4) of 61 O.S.Supp.1987 § 113(B).[4] Subsection (3) mandates that a bond be provided in a sum certain. The provision requires a bond be provided to the public agency equal to the contract price to protect the public agency against defective workmanship and materials for a period of one year. No latitude is apparent in this provision, as was noted by this Court in *Carpet City.* However, subsection (3) is in stark contrast to the provision found in subsection (4) providing for public liability and workers' compensation coverage. Subsection (4) states that "Public liability and workers' compensation insurance shall be provided by the contractor in reasonable amounts." The exact dollar amount of the insurance is not mandated under this provision.

■ It is undisputed under the facts of this case that the contractors are providing off-site coverage in both of the areas addressed in subsection (4). As previously stated, the Authority is providing the necessary insurance for on-site activities. All the statute requires is that the contractors provide coverage in reasonable amounts. We do

---

4. 61 O.S.Supp.1987 § 113(B) provided in relevant part:

B. Except as otherwise provided by law, ... the following shall be provided by the contractor to the awarding public agency:

3. A good and sufficient bond in a sum equal to the contract price or an irrevocable letter of credit containing such terms as may be prescribed by the Office of Public Affairs issued by a financial institution insured by the Federal Deposit Insurance Corporation or the Federal Savings and Loan Insurance Corporation for the benefit of the state, on behalf of the

awarding public agency, in a sum equal to the contract price, to protect the awarding public agency against defective workmanship and materials for a period of one (1) year after acceptance of the project; and

4. Public liability and workers' compensation insurance during construction in reasonable amounts. A public agency may require the contractor to name said public agency and its architects and/or engineers as an additional assured under said public liability insurance, which requirement, if made, shall be specifically set forth in the bidding documents.

not perceive appellees' argument to be that the amount of off-site coverage is unreasonable by virtue of being inadequate or excessive, but only that the statute requires the contractor to furnish *all* such insurance. The statute simply does not contain such a requirement. Subsection (4) merely requires the contractor to provide insurance in reasonable amounts.

■ This Court has held that the Competitive Bidding Act is for the primary benefit of the taxpaying public. *Rollings Constr., Inc. v. Tulsa Metro. Water Auth.*, 745 P.2d 1176, 1179 (Okla.1987). Its purpose is to obtain the best results at the lowest cost, the greatest value for the fewest dollars. Stated otherwise, it is a means for making the best possible bargain. *Id.* at 1178, citing *Flynn Constr. Co. v. Leininger*, 125 Okla. 197, 257 P. 374 (1927). To this end, we recognized in *Rollings* that the Act affords a contracting authority discretion in determining the lowest responsible bidder. We similarly conclude here that the Act grants a contracting authority discretion in determining what amount of insurance constitutes a "reasonable amount" under § 113(B)(4). As previously set forth, appellees do not challenge the *reasonableness* of the insurance being provided by contractors under the program at issue. In view of the fact that the OCIP is structured to provide the balance of the insurance, it cannot be said that the amount provided by the contractor is unreasonable under the facts presented. "[I]n the absence of a showing of fraud, or abuse of discretion or collusion therein, the discretion of the [Authority] will not be controlled by this court." *Leininger v. Ward–Beekman & Brooks*, 139 Okla. 292, 282 P. 467, 472 (1929).

Finally, we address appellees' argument that the Authority's purchase of insurance for the OCIP violated § 103 of the Public

Competitive Bidding Act, 61 O.S. § 101 et seq. Section 103 provides:

> All public construction contracts shall be let and awarded to the lowest responsible bidder, by free and open competitive bidding after solicitation for sealed bids, in accordance with the provisions of this act. No work shall be commenced until a written contract is executed and all required bonds and insurance have been provided by the contractor to the awarding public agency.

■ A "public construction contract," as expressly defined in 61 O.S. § 102[5], is any contract exceeding $7,500.00 awarded by a public agency for the purpose of making any beneficial change or addition upon real property, to enhance its value or utility or to adapt it to new or further purposes. Providing of insurance does not fall within this definition and is not included in those items to which the Public Competitive Bidding Act is applicable. There is thus no requirement that insurance be procured by competitive bidding under the Act. The distinction between construction, for which competitive bidding is necessary, and the preliminary steps necessary to put the construction process into operation has been noted in this jurisdiction prior to this time. See *Weathers v. Layton & Forsyth*, 104 Okla. 14, 230 P. 750, 751 (1924). *Weathers* notes a line of authority which recognizes that professional services have been excluded in some jurisdictions from the compass of competitive bidding statutes, although we do not make our conclusion here based upon that authority.

We further note that our decision herein renders moot the Authority's Application to Assume Original Jurisdiction and for Writ of Prohibition in Cause No. 75,197.

**THE JUDGMENT OF THE TRIAL COURT IS REVERSED.**

---

**5.** Title 61 O.S.1981 § 102 provided in relevant part:

> 4. "Public construction contract" or "contract" means any contract, exceeding Seven Thousand Five Hundred Dollars ($7,500.00) in amount, awarded by any public agency for the purpose of making any public improvements or constructing any public building or making repairs to the same;

5. "Public Improvement" means any beneficial or valuable change or addition, betterment, enhancement or amelioration of or upon any real property, or interest therein, belonging to a public agency, intended to enhance its value, beauty or utility or to adapt it to new or further purposes. The term does not include the direct purchase of materials, equipment or supplies by a public agency....

HODGES, C.J., LAVENDER, V.C.J., and HARGRAVE, ALMA WILSON, SUMMERS and WATT, JJ., concur.

SIMMS, J., concurs in judgment.

KAUGER, J., concurs in result.

OPALA, J., not participating.